THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HORACE TUCKER, Defendant-Appellant.

(No. 54596;

First District—December 16, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Brian D. Alpert, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant was charged with murder. After a jury trial he was convicted of voluntary manslaughter and sentenced to a term of 4 to 10 years. On appeal he contends that his conviction for voluntary manslaughter was improper; that the court erred in refusing to give a certain instruction tendered by defendant; and that the court erred in permitting a child to testify as State witness without a determination of her competency. The pertinent facts are as follows.

On the evening of decedent's death, she and defendant attended a party together. Jewel Leon testified for the State that she was present when they arrived at the party. Defendant and deceased were quarreling when they arrived and throughout the evening. Defendant fell asleep and when he awoke asked the deceased where she had gone. Her reply that she had not gone anywhere angered defendant. They resumed the quarrel, and defendant left the party. Decedent followed him. Miss Leon, who had been offered a ride home by the defendant and deceased earlier in the evening, followed them to the street. When she arrived on the street, she noticed defendant in his car alone trying to drive

away. Decedent was beating on the car windows. Decedent then bent the radio antenna on defendant's car. Defendant stopped, emerged from the car and ordered deceased to fix the antenna. When she had straightened the antenna, defendant stated that she had not fixed it properly and that he was going to kill her. Miss Leon noticed something in defendant's hand. She heard the report of a gun and saw the deceased fall. Defendant returned to the car and drove away. He drove to a gas station, called the police and waited for their arrival.

Defendant testified in his own behalf that he brought deceased to the party in question. Upon leaving, he entered his car and began to pull away. A group of teenagers approached, shouting "Blackstone Rangers." Fearing trouble from them, he took his gun out of the car. As he walked around the car to open the door for the two women, someone pushed him. The gun discharged, a bullet striking the deceased. The deceased was his girl friend. He denied ever threatening her, and denied that they quarreled on the evening of the shooting.

Deceased's ten-year-old daughter testified in rebuttal for the State that defendant twice had threatened to kill her mother, once on the previous Easter Sunday. Two witnesses testified in rebuttal for the defense that they were present at the Easter Sunday gathering, and that defendant had not threatened to kill the deceased.

The State tendered instructions defining the elements of the crimes of murder, voluntary manslaughter and involuntary manslaughter. Before giving the instructions, the trial judge asked defense counsel if he had objections to any of the instructions. When counsel stated that he had no objections, the judge stated that then he would give verdicts covering all three crimes: murder, voluntary and involuntary manslaughter. During closing argument, the prosecutor stated that the State had proved defendant guilty of murder, but if the jury believed that the acts which preceded the firing of the shot were sufficient to inflame the passions of a reasonable man, then they should find defendant guilty of voluntary manslaughter. Defense counsel interrupted the prosecutor, but made no objection to the statement.

Defendant first argues that there was insufficient evidence to find that he had the requisite mental state to be found guilty of voluntary manslaughter. Voluntary manslaughter is defined in Illinois as follows:

"(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or

(2) * * *

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." Ill. Rev. Stat. 1969, ch. 38, par. 9—2(a).

Defendant maintains that the conduct of the decedent prior to the instant killing could not possibly excite such an intense passion in a reasonable man that would cause him to kill. He thus urges that the testimony of Jewel Leon would support a murder conviction, but not one for voluntary manslaughter.

■■ Serious provocation is an essential element of voluntary manslaughter; and words and gestures are not sufficient provocation to excite a reasonable man. (*People v. Marrow*, 403 Ill. 69, 85 N.E.2d 34.) However, in *People v. Harris*, 8 Ill.2d 431, 134 N.E.2d 315, the court stated at p. 434, 436:

> "We have long held that if there is any evidence in the record which, if believed by the jury, would reduce a charge of murder to manslaughter, an instruction defining that crime should be given. [Citations omitted]
>
> * * * The jury and the trial judge observed the witnesses, heard them testify, and were in a much better position to determine their credibility than a court of review. This court will reverse because of insufficient evidence only where that evidence is so palpably contrary to the verdict, or is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt." [Citation omitted]

■■ In the instant case, Miss Leon's testimony established that deceased had quarreled throughout the evening. After defendant awakened, the quarrel resumed. Defendant attempted to get away from the deceased. She followed him, and beat on his car windows as he tried to drive from the curb. She then bent the antenna on the car. The shooting ensued. The question of whether particular conduct is sufficient to inflame the passion of the defendant is uniquely within the province of the triers of fact. Because of their superior position in viewing the witnesses on the stand, in hearing and weighing the testimony, we are reluctant to substitute the judgment of this court for the jury's determination that the acts of the deceased were sufficient provocation to inflame defendant to kill. At the same time, we recognize that in order to constitute sufficient provocation, the acts of the deceased must be serious.

■■ In concluding that the instant conviction for voluntary manslaughter should be upheld, we have carefully considered the conduct of the defense at trial. The State tendered a number of instructions, including those defining the elements of crimes of murder and voluntary manslaughter. The trial judge inquired of defense counsel if he objected to any of the State's instructions. When counsel replied that he had no objections, the court then indicated that he would give the

jury verdict forms covering both crimes. Again, defendant offered no objection. During closing argument, the prosceutor argued extensively that the State had proved defendant guilty of murder. However he also stated that if the jury believed that decedent's conduct prior to the killing was sufficient provocation to excite a reasonable man they should find defendant guilty of voluntary manslaughter. Defendant did not object to this argument. In *People v. Green*, 23 Ill.2d 584, 179 N.E.2d 644, defendant was found guilty of involuntary manslaughter. On appeal he contended that there was no evidence of manslaughter whatsoever presented at trial. In affirming the conviction, the court observed that counsel for defendant stated in the trial court, attempting to evade a finding of murder, that the trial judge could "safely find manslaughter." Yet on appeal counsel argued to the contrary. Similarly, in the instant case, defendant benefited at trial by the instruction and argument concerning manslaughter. An examination of the colloquy between court and counsel makes it evident that the court gave the instruction and verdict on voluntary manslaughter in order to be fair to defendant. In doing so, the trial court followed the principle that the "doctrine of provocation is a compassionate one, based on a recognition of human frailty." (*People v. Crews*, 38 Ill.2d 331, 231 N.E.2d 451.) The instruction and verdict covering voluntary manslaughter was given for defendant's benefit.

Defendant next contends that the trial court committed reversible error in refusing to give to the jury an instruction tendered by defendant which supported defendant's theory of the case that the death was a result of misadventure. The instruction stated as follows:

"The Court instructs the jury that excusable homicide by misadventure or accident is when a person is doing a lawful act without intention of killing, yet unfortunately kills another, as where a man is at work with an ax and the head flies off and kills a bystander, or where a parent is moderately correcting his child, or a master his servant, or scholar, or an officer punishing a criminal and happens to occasion death. It is only a misadventure, for the act of correction was lawful, and in this regard, the Court instructs the jury that all instances, which stand upon the same footing of reason and justice as those enumerated, shall be considered justifiable or excusable homicide, and the Court further instructs the jury that in the event of the homicide appearing to be justifiable or excusable, the person indicted shall, upon his trial, be fully acquitted and discharged. In this case, the Court instructs you that the question of whether or not the shooting of Betty Jean Hemphill by Horace Tucker was accidental or by misadventure is a question of fact for you to decide having in mind

all of the facts and circumstances in connection with said killing."
■■ Defendant is entitled to an instruction based on his theory of the case. (*People v. Lefler,* 38 Ill.2d 216, 230 N.E.2d 827.) However Supreme Court Rule 451 provides that when possible the trial court should use I.P.I.-Criminal Instructions. The rule goes on to state that:

"Whenever I.P.I.-Criminal does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial, and free from argument."

■■ The instruction tendered by defendant obviously was neither simple, brief, impartial or free from argument. If given, it could have served only to confuse the jury. The trial court properly refused to give the instruction.

■■ Finally defendant argues that the court committed reversible error in permitting decedent's ten-year-old daughter to testify without a prior determination as to her competency. Every person who is fourteen years old is presumed competent to testify. (*People v. Karpovich,* 288 Ill. 268, 123 N.E. 324.) When a child under that age is called to testify, it is the duty of the trial judge to determine first whether the child is competent as a witness. *People v. Crews,* 38 Ill.2d 331, 231 N.E.2d 451.

■■ Defendant concedes that in the instant case defendant made no objection to the competency of the child to testify. Rather he argues that under Supreme Court Rule 615, "plain errors affecting substantial rights may be noticed on appeal, although they are not brought to the attention of the trial court." We recognize that failure to conduct a preliminary hearing as to the competency of a child to testify might under certain circumstances constitute plain error requiring reversal. However we are not persuaded in the case at bar that failure of the court to conduct such an inquiry without request by defendant constituted prejudicial error. The child testified with clarity as to threats made by defendant upon her mother's life, and was unshaken in cross-examination. More significantly, her testimony was introduced primarily to show premeditation on the part of defendant and that he was guilty of murder. Since the jury found defendant guilty of voluntary manslaughter, it is apparent that they did not give the child's testimony any weight in reaching their verdict. Permitting her to testify without a pre-determination of her competency was not prejudicial to defendant.

For the foregoing reasons, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DEMPSEY and McGLOON, JJ., concur.