THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GAYLON V. PUCKETT, Defendant-Appellant.

(No. 55115;

First District—June 1, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Stephen Connolly, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

After a jury trial, defendant was found guilty of murder and sentenced to a term of 40 to 50 years. On appeal he contends that he was not proved guilty beyond a reasonable doubt, that the trial court committed reversible error in refusing to give an instruction to the jury as to defendant's theory of the case, and that the court improperly permitted a photograph of the deceased to be introduced into evidence and shown to the jury.

On February 22, 1969, defendant, while armed with a revolver, went to the home of the deceased, Mitchell Rybicki. When Mrs. Rybicki, mother of the deceased, answered the door, she told defendant that her son was confined to bed because of illness, but permitted him to go to her son's room to see about a set of car keys. Defendant entered the deceased's room, closing the door, while the mother resumed a telephone conversation with another son. The father of the deceased testified through an interpreter that after a few minutes in the closed room he heard the defendant say in a loud voice, "Mitch, I kill or killed." He

then heard defendant say in a more normal tone of voice, "I kill or I am going to kill." The father heard a gunshot, and both parents ran to another apartment and summoned the police. When the police arrived, they found the son dead from a gunshot wound in the left eye.

Defendant left the apartment, spoke briefly to Chester Kupis, then commandeered an automobile driven by Paul Wilkey at the point of a gun. In ordering him to drive away, defendant told Wilkey, "I just killed a man, and I would kill you if I have to." Wilkey escaped from the car, and defendant drove off. Defendant drove the car to Mississippi, and eventually was arrested in Kentucky about two weeks later. Wilkey's automobile was also recovered in Kentucky.

Chester Kupis testified for the State that he accompanied defendant to the deceased's house, but waited outside. Kupis stated that the defendant was carrying a loaded gun which Kupis had purchased from the deceased for forty dollars on the previous day. Defendant, according to Kupis, was visiting the deceased to recover the forty dollars for Kupis and to obtain a set of car keys for himself. When defendant came out of the deceased's house, he told Kupis that he had his car, but not Kupis' money.

Defendant testified on his own behalf that on February 20, 1969, he and the deceased had visited the apartment of Tom Jones and Joseph Steele and had seen Steele's gun collection. Defendant subsequently learned that the deceased stole one of Steele's guns and sold it to Kupis. Defendant stated that he gave deceased the keys to Jones' car in order to get the gun back, and also gave deceased some narcotics. Defendant later recovered the gun himself from Kupis, and went to the deceased's home to get Jones' car keys. Defendant testified that the deceased appeared to be suffering from an overdose of drugs. When defendant displayed the gun without any thought of using it, the deceased lunged at it, causing it to fire and hit deceased. Defendant stated that his finger was never on the trigger. He also testified that he had done nothing to provoke the deceased. Defendant drove to Mississippi where his sister advised him to return to Chicago and surrender himself. He was in the process of doing so when he was arrested in Kentucky.

John M. Sadunas, a firearms expert for the Chicago Police Crime Laboratory, testified in rebuttal that the gun used by defendant had three positive safeties on it. He also testified and exhibited to the jury that, because of the safeties, the gun could not be fired unless the safety had been taken off.

■■ While defendant argues that his guilt was not established beyond a reasonable doubt, we believe the proof sufficient to warrant a finding of guilty. Although the evidence was circumstantial, in our view, it was

strong, convincing and sufficient to support a conviction. (See *People v. Brown,* 27 Ill.2d 23, 187 N.E.2d 728.) When we mention strong and convincing evidence, we refer especially to the following: the testimony of the parents of the deceased, particularly that of the father as to defendant's shouts in the closed room; the defendant's inculpatory statement to Wilkey that he had killed a man; the expert testimony which contradicted defendant's version that the shooting was accidental; and the unexplained flight by the defendant from the State in the stolen car. To warrant a conviction on circumstantial evidence the facts proved must so thoroughly establish the guilt of the accused so as to exclude every reasonable hypothesis of his innocence. (*People v. Dougard,* 16 Ill.2d 603, 158 N.E.2d 596.) However the triers of fact are not required to search out a series of potential explanations compatible with innocence, and elevate them to the statute of a reasonable doubt. (*People v. Huff,* 29 Ill.2d 315, 194 N.E.2d 230.) In the instant case, the evidence clearly was sufficient to support the conviction.

Defendant also argues that the trial court committed reversible error by refusing to give to the jury an instruction tendered by defendant which supported defendant's theory that the death was caused by accident or misadventure. The refused instruction, not contained in I.P.I.-Criminal Instructions, stated as follows:

"The Court instructs the jury that excusable homicide by misadventure or accident is when a person is doing a lawful act without intention of killing, yet unfortunately kills another, as where a man is at work with an ax and the head flies off and kills a bystander, or where a parent is moderately correcting his child, or a master his servant, or scholar, or an officer punishing a criminal and happens to occasion death. There is only a misadventure, for the act of correction was lawful, and in this regard, the Court instructs the jury that all instances, which stand upon the same footing of reason and justice as those enumerated, shall be considered justifiable or excusable homicide, and the Court further instructs the jury that in the event of the homicide appearing to be justifiable or excusable, the person indicated shall, upon his trial, be fully acquitted and discharged. In this case, the Court instructs you that the question of whether or not the shooting of Mitchell Rybicki by Gaylon Puckett was accidental or by misadventure is a question of fact for you to decide having in mind all of the facts and circumstances in connection with said killing."

In *People v. Tucker,* 3 Ill.App.3d 152, 278 N.E.2d 516, we ruled that the trial court properly refused to give an instruction practically identical to the above. In that case, we held that the tendered instruction was argumentative, slanted and confusing, and we readopt that holding in

the case at bar. Defendant, however, argues that *Tucker* is distinguishable from the instant case because here the trial judge refused to give the instruction, not because it was argumentative, but because it was not contained in I.P.I.-Criminal Instructions. Defendant thus maintains that, even if he had submitted a non-argumentative, impartial instruction on the subject matter, it would have been refused.

■■ Although in *Tucker*, we cited *People v. Lefler*, 38 Ill.2d 216, 230 N.E.2d 827, which held that defendant was entitled to an instruction on accident or misadventure, we believe that the jury was instructed adequately in the instant case. We note initially that the trial judge did not rule, as defendant suggests, that he was refusing the instruction because it was not contained in I.P.I.-Criminal Instructions, but rather because he believed that all the instructions necessary to be given were in I.P.I. We observe also that the *Lefler* decision was handed down before Supreme Court Rule 451 became effective. Rule 451, effective January 1, 1969, required that I.P.I.-Criminal Instructions be used where applicable, unless the trial court determined that the instruction did not accurately state the law. The rule further required that all instructions be simple, brief, impartial and free from argument, adopting the recommendations of the Committee on Pattern Instructions in Criminal Cases. The Committee's preparation of a new series of instructions in simple, non-partisan language was intended to result in an instruction given by the court rather than the partisanship of prosecution and defense instruction on the same subject. In the case before us, the jury was instructed as to the elements and issues of the crime of murder. It was instructed that defendant could be convicted of murder only if he committed the act that caused the death and if he actually intended to kill or do great harm to the deceased. The jury was also instructed that in order to be convicted of murder defendant must have had the specific intent to kill the deceased. We believe that the possibility of death by accident or misadventure was covered adequately by the instructions given. In *People v. Routt*, 100 Ill.App.2d 388, 241 N.E.2d 206, the court found that the evidence had raised a fact issue that the shooting in question was accidental and referred to the *Lefler* decision, but upheld the trial court's refusal to give an instruction as to accidental death on the grounds that the instructions given were sufficient to instruct the jury properly. Similarly, we hold that the trial court did not err in refusing to give the tendered instruction.

Defendant also contends that the trial court committed reversible error by permitting a photograph of the deceased to be introduced into evidence and shown to the jury. The photograph complained of was a black and white glossy taken of the upper portion of the deceased's body

lying on the morgue table. The photograph also revealed the injury to the eye. During trial the photograph was marked for identification and shown to the deceased's parents and to one of the police officers. As the State rested, both sides stipulated that the cause of death was a gunshot wound to the eye and as to the identity of the deceased. The photograph, over defendant's objections, then was introduced into evidence and shown to the jury.

■■■ Defendant recognizes the general rule that the admissibility into evidence of a deceased's photograph ordinarily rests within the discretion of the trial judge and that such a photograph may be admitted, even if gruesome and inflammatory, as long as it has probative value. However, he maintains that, once the instant stipulations were entered, the photograph had no probative value, was inflammatory and also was irrelevant to the issues. That contention was answered by the Supreme Court in *People v. Speck*, 41 Ill.2d 177, 242 N.E.2d 208, when it stated at p. 201: "* * * the defendant pleaded not guilty and the State had the right to prove every element of the crime charged and was not obligated to rely on the defendant's stipulation." Moreover, we have examined the photograph and we do not believe that the trial court abused its discretion in admitting it into evidence.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON, P. J., and DEMPSEY, J., concur.