THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD M. DODSON, Defendant-Appellant.

(No. 56141; ▮▮▮▮▮▮▮)

First District (2nd Division)—April 24, 1973.

James J. Doherty, Public Defender, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant was indicted for murder. After a bench trial he was convicted of the lesser included offense of voluntary manslaughter and sentenced to a term of not less than eight nor more than twenty years. Two issues are presented on this appeal:

(1) Whether the warrantless seizure of defendant's jacket was illegal; and

(2) Whether the evidence established defendant's guilt beyond a reasonable doubt.

On October 14, 1969 defendant and his cousin, Myron Violet, went to Elsie's, a tavern in Lyons, Illinois, in defendant's vehicle. While in the establishment defendant engaged in an argument with a barmaid, Mary Ludington. His cousin admonished him, "You're just going to get yourself in trouble, you are out looking for it, I don't want any part of it and I am leaving." Violet departed the tavern. Defendant then presented his grievance to the tavern owner.

Decedent, Elizabeth Blondin, was a patron of Elsie's at the time defendant and Violet were on the premises. Mary Ludington had occasion to observe the contents of decedent's purse during the evening. She described and identified the purse at trial.

After presenting his grievance to the tavern owner defendant engaged in a conversation with decedent. Decedent then informed Ethel Boesch, another barmaid employed at Elsie's, that "she was going down the street" and, indicating defendant, "this fellow wants to go with me, I don't know why." Ethel Boesch then spoke to defendant. He was wearing a jacket with a Standard Oil Company emblem on it. He responded to her inquiries that his name was Gerry and he was employed at the H

and W Standard station located at Harlem and Washington, whereupon decedent said: "Write that down just in case." Defendant and decedent departed the tavern together at approximately 3:00 A.M. on October 15, 1969.

Three prosecution witnesses testified that defendant did not appear to be intoxicated while he was at Elsie's.

Clif Hiller, a fellow employee of defendant's at the H and W Standard station, testified that he saw defendant drive past the station at approximately 6:30 A.M. Defendant was traveling in the direction of his apartment.

Dr. Stanley Palutsis testified that he observed an automobile, similar in appearance to defendant's, being operated in an erratic manner in a park across the street from his house at approximately 6:45 A.M. on October 15, 1969. When the automobile departed, he observed decedent's body near the site where the automobile had been. He immediately telephoned the police.

Officer John Smith of the Riverside Police Department responded to the report. When he arrived at the scene he observed decedent's body, naked from the waist down, near the roadway. Upon removing the body, he discovered a button beneath decedent's left elbow. The button was preserved for evidence and was later determined by crime laboratory analysis to be morphologically similar in all visual characteristics to each of the buttons remaining on a jacket owned by defendant.

Defendant reported for work at 9:30 A.M. on October 15, 1969. Shortly thereafter he engaged in a phone conversation with his wife. She expressed anger in telling him that she had found a purse in his automobile. His wife regularly utilized his automobile in traveling to her place of employment, so defendant borrowed a vehicle and went there. Upon his arrival he entered his automobile and discovered a purse on the rear seat. Defendant testified that there was no identification in the purse, so he discarded it in a garbage can. The purse was subsequently recovered and identified at trial as decedent's.

Defendant testified that he departed Elsie's with decedent because "she wanted a lift somewhere and I was getting plastered." He sat in the back seat of the automobile because he was too intoxicated to drive. Decedent sat in the front seat with his cousin, Violet, who had been waiting at the automobile. The three patronized two additional taverns after departing Elsie's. At the final tavern they visited, defendant exited alone and went to sleep in the car. When he awoke he was alone in the vehicle and it was located in a parking lot behind his apartment building. He went into his apartment and resumed his sleep.

In rebuttal, Officer Smith testified that he was present at the police

station during the morning of October 16, 1969 and heard defendant relate that he was alone when he departed Elsie's and had driven to two other taverns.

Myron Violet was admitted to Chicago State Hospital on or about October 16, 1969 because he had attempted to commit suicide. His mental problems allegedly stemmed from long standing marital difficulties.

Defendant contends that the warrantless seizure of his jacket was illegal and it was, therefore, reversible error to deny his motion to suppress it from evidence. The following evidence was adduced at the hearing on the motion to suppress:

Fay Dodson, defendant's wife, testified that she was present at their apartment on October 15, 1969 at approximately 10:00 P.M. when police officers arrived and requested defendant to accompany them to the police station. Defendant complied with the request and returned home in the early hours of the morning. He wore his jacket to the police station, but was not wearing it when he returned to the apartment.

Defendant testified that four police officers arrived at his apartment at 9:00 or 9:30 P.M. on October 15, 1969. He invited them into the apartment. The officers requested that he accompany them to the police station as they thought he could assist them in regard to an occurrence at Elsie's. The police advised him to bring his jacket because it was cold outside. They did not assist him in selecting a jacket nor did they suggest that he wear a particular jacket. He was at the police station for approximately two hours on his first visit. Prior to departing the police station, he requested his jacket, but was informed that he could not take it. When he inquired as to the reason for not being allowed to take the jacket he was told that it was being retained as evidence. He was furnished another jacket to wear home.

Police Officer Donald Gossling testified that he arrived at defendant's apartment at approximately 11:00 P.M. on October 15, 1969 and was admitted inside. He read defendant his "constitutional rights" from a card; defendant acknowledged that he understood them and declined to give a statement. A request was made that defendant accompany the officers to the Riverside Police Department and he voluntarily did so. Before defendant was released from the police station, Officer Gossling asked him for his jacket and defendant gave it to him. The purpose of taking the jacket was to seek evidence.

Officer Smith testified that he found decedent's body and discovered a button in the course of his investigation. Later that night he had occasion to talk with defendant at the Riverside Police Station. Defendant's jacket was hanging on a coat tree and each sleeve was missing a button.

The buttons remaining on the jacket appeared the same as the button found near the body. Officer Gossling asked defendant to leave his jacket and defendant stated that he would.

The trial court found that there was probable cause to arrest defendant and probable cause to seize his jacket at the time the seizure occurred. Defendant does not contest these findings, but argues that the jacket should have been suppressed because the police failed to obtain a warrant authorizing the seizure.

■■ It is our opinion that the motion to suppress was properly denied as to the jacket. It has been held that objects in plain view of police officers, who have a right to be in a position to have that view, are subject to seizure and admissible in evidence. (*Harris v. United States,* 390 U.S. 234; *People v. George,* 49 Ill.2d 372, 274 N.E.2d 26; *People v. Stanbeary,* 126 Ill.App.2d 244, 261 N.E.2d 765.) In the instant case defendant voluntarily brought the particular jacket to the police station without suggestion from the police officers that he do so. While the jacket was in plain view at the police station, the officers recognized its potential evidentiary value and seized it. Under the circumstances of this case, defendant's Fourth Amendment rights were not violated. (See *Hancock v. Nelson,* 363 F.2d 249 (1st Cir.)) We do not consider that *Coolidge v. New Hampshire,* 403 U.S. 443, commands a different result.

■■ Defendant also contends that the circumstantial evidence adduced at trial was insufficient to support his conviction. A conviction may be sustained upon circumstantial evidence if the proof is of such a nature as to produce a reasonable and moral certainty that defendant perpetrated the crime. (*People v. Marino,* 44 Ill.2d 562, 256 N.E.2d 770; *People v. Hunter,* 3 Ill.App.3d 676, 279 N.E.2d 490.) An examination of the record before us does not convince this court that the trial court erred in finding defendant guilty.

Our examination of the record has, however, revealed an additional problem that we have decided to consider. Defendant was indicted for the offense of murder, and the evidence, although circumstantial, was sufficient to support a finding of guilty on that charge. However, the trial court found defendant guilty of the lesser included offense of voluntary manslaughter. Although the *corpus delicti* for the two offenses is identical, the mental states are different. Sufficient evidence was adduced to establish the mental state necessary to a finding of guilty of the charge of murder, but no evidence was adduced to establish the mental state unique to the offense of voluntary manslaughter. In *People v. Bailey,* 56 Ill.App.2d 261, 205 N.E.2d 756, under similar circumstances the court

exercised its broad appellate discretion * to reverse a conviction of voluntary manslaughter and to enter instead a finding of guilty of involuntary manslaughter. The court's rationale was stated as follows:

"It has been held that where a person is indicted for murder and found guilty of involuntary manslaughter he cannot complain if the evidence was of such a character to justify the court in finding the defendant guilty of murder. [Citations omitted.]

In the case before us, considering all the evidence and also bearing in mind that both the trial court and the jury saw and heard the witnesses, we are of the opinion that the defendant was proved guilty of killing the deceased, beyond a reasonable doubt. [Citations omitted.]

In finding the defendant guilty the jury indicated that it did not believe the testimony of the defendant but had inferred from all the circumstances that defendant had killed his wife. This being so, it can be inferred from the uncontradicted evidence that the acts which caused the death of Mrs. Bailey were administered recklessly." 56 Ill.App.2d 261, 276-277.

We concur in this reasoning and believe that the disposition in *Bailey* is equally appropriate under the facts at bar.

■■ Defendant's conviction for voluntary manslaughter is reversed. We find that under the evidence defendant was guilty of the offense of involuntary manslaughter. The case is remanded to the Circuit Court of Cook County with directions to enter a finding of guilty of involuntary manslaughter and to impose an appropriate sentence.

Reversed and remanded with directions.

LEIGHTON and HAYES, JJ., concur.

---

* Ill. Rev. Stat. 1965, ch. 38, par. 121—9. This provision was repealed in 1967, but the powers previously conferred therein have been reaffirmed in Supreme Court Rule 615. Ill. Rev. Stat. 1971, ch. 110A, par. 615.