THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ISRAEL PEQUINO, Defendant-Appellant.

First District (3rd Division)   No. 77-38

Opinion filed June 28, 1978.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Joseph P. Quirk, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

On March 26, 1973, defendant Israel Pequino shot and killed a 17-year-old high school senior (referred to herein as "the victim"). Defendant was convicted of murder and sentenced to a term of 14 to 42 years. Defendant, appealing from his conviction, contends that the circuit court erred in refusing to give an instruction on voluntary manslaughter submitted by defendant, and that his maximum sentence of 42 years should be reduced.

Because of a birth defect, defendant's body was partially deformed. He was embarrassed about his physical condition and would become angry when anyone called him a cripple.

Defendant first met the victim almost 4 years prior to the murder, when defendant was in eighth grade and she was in seventh grade. They dated steadily until March 1972 when she revealed to defendant that she was pregnant. The victim and defendant told her parents of the pregnancy and that they were considering marriage. Her parents told them that they would support them in solving the problem. Subsequently, at a meeting at defendant's home between the victim and defendant and their parents, it was agreed that the best solution would be that the victim have an abortion and the families share in the expense. Defendant did not want the abortion, but remained silent about his wishes.

The victim and defendant dated less frequently after the abortion. In the summer of 1972, defendant tried to resume the relationship as before, but with no success. Through late 1972 and early 1973, the two saw each other only occasionally. They discussed getting back together, but the victim told defendant that it was too early. Both the victim and defendant dated others after the abortion.

On March 26, 1973, defendant decided to skip school and drove his car around all morning. Near noon, defendant stopped at his home and picked up his father's loaded .38 caliber handgun. He strapped on the holster containing the gun, left the house and again began to drive around. At approximately 2 p.m., defendant met the victim and a friend walking home from school. Defendant offered them a ride home, which they accepted. The victim told defendant that she wanted to go to her friend's house, but he objected and told her that he wanted to talk with her. Defendant dropped the friend off at her house, and the couple proceeded to the victim's home.

Defendant testified that once inside he began asking her about getting back together again. The victim said that it would not work out and that they should forget it. Defendant then stated that he would kill himself if she would not go back with him. She replied "nonsense" and suggested they watch television. Defendant insisted, telling her that he was serious and wanted to work things out so they could have children in the future. Defendant testified that the victim responded that she was tired of hearing about what he wanted to do, and that she did not want to take a chance that her children might be deformed. Defendant testified that when she called him a cripple, he placed the gun he was carrying to his head. He claimed that he remembered nothing after that moment until he heard a clock chime and he was placing the gun on a table.

When defendant saw the victim lying on the floor bleeding, he ran out of the house and drove to school where he told a guidance counsellor that he had shot the girl. An ambulance was summoned to the home, where she was found with multiple gunshot wounds which caused her death later that day.

■■■ Defendant contends a voluntary manslaughter instruction was required because the evidence indicates that he was acting under a sudden and intense passion resulting from serious provocation. Voluntary manslaughter is defined as follows:

> "(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
> (1) The individual killed, * * *.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(a).)

Although the offense is a legal compromise between murder and exoneration recognizing a human weakness of intense passion caused by serious provocation (*People v. Applewhite* (1975), 25 Ill. App. 3d 480, 323 N.E.2d 360), a long line of case law holds that mere words can never be sufficient provocation to justify voluntary manslaughter. (*People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451; *People v. Hall* (1975), 25 Ill. App. 3d 992, 324 N.E.2d 50; *People v. Matthews* (1974), 21 Ill. App. 3d 249, 314 N.E.2d 15.) However, in the instant case, defendant argues his provocation was caused by something in addition to mere words. He contends that a progressive view of the law recognizes that the nature of the relationship between the victim and himself and their respective families, combined with her alleged words on the day of the shooting, is sufficient to establish the required provocation. We do not agree.

Defendant points to what he claims was a lengthy quarrel between the victim and himself and their families. This alleged feud apparently was based on the decision to have an abortion. However, the record indicates that the two families jointly decided that the best course of action would be to abort the pregnancy. There is no evidence that the families argued over the decision. In fact, there is no evidence that the families had even met, much less quarreled, within the year prior to the shooting. Whatever passion or hard feelings were aroused in defendant by the decision to end the pregnancy, a year was more than sufficient time for his passion to cool and the voice of reason to be heard. See *People v. Clark* (1973), 15 Ill. App. 3d 756, 305 N.E.2d 218.

Thus, the only plausible basis for a manslaughter instruction was the relationship between the victim and defendant. Although defendant testified that he wanted her to keep the child and to marry him, the two had no argument over the decision to terminate the pregnancy. They dated occasionally after the abortion and the evidence suggests they were contemplating a reconciliation in the months preceding the murder. There is no evidence that the two quarreled violently except for the day of the shooting. In fact, the only evidence of disagreement prior to the shooting was the victim's refusal to accede to defendant's repeated demands to immediately recommence the relationship with the same frequency and intensity which previously existed.

Defendant relies primarily on *People v. Newberry* (1970), 127 Ill. App. 2d 322, 262 N.E.2d 282, where the court held that the circumstances of the relationship between the defendant and the deceased justified the voluntary manslaughter instruction given by the trial court. In *Newberry*, the defendant had left his wife and given substantial sums of money to the

deceased in reliance on their relationship. He had moved out of his marital home and was living out of his car. His relationship with the deceased had terminated only weeks before the shooting, and he had been in a suicidal state of mind for some time. In the present case, however, defendant had neither left anyone nor given money to his victim. Whatever initial trauma defendant suffered, the termination of the steady relationship had occurred over a year prior to the shooting, and there is no indication that defendant had been in a suicidal state of mind for a period of time. In short, defendant here was not in the same position as the defendant in *Newberry.*

In contrast to *Newberry* is *People v. Pecora* (1969), 107 Ill. App. 2d 283, 246 N.E.2d 865, where the deceased, the defendant's ex-wife, had flaunted her immoral conduct to the defendant, ridiculed the defendant's sexual abilities, and bragged about having an abortion. Two and one-half weeks prior to the killing, the deceased had been cited in a legal proceeding for engaging in immoral conduct before the couple's children. Notwithstanding these circumstances, the trial court's refusal to instruct the jury on voluntary manslaughter was upheld. The alleged provocation the defendant in this case suffered does not appear to have been nearly as disturbing as the provocation held insufficient to warrant an instruction in *Pecora.*

■■   There is a total lack of evidence of serious provocation in the present case. The facts relied upon by defendant demonstrate nothing more than that defendant was a jilted lover. Defendant's frustration over his failure to have his way cannot serve to reduce the criminal responsibility of his cruel act to voluntary manslaughter. The circuit court ruled correctly in refusing to tender a voluntary manslaughter instruction to the jury.

Defendant contends that this court should reduce his maximum sentence of 42 years. He directs our attention to his age (20 years), the absence of any serious criminal record, and his emotional problems as factors requiring a reduction. Supreme Court Rule 615(b)(4) grants reviewing courts the power to reduce the sentence imposed by the trial court. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4).) However, a reasoned judgment as to the proper sentence to be imposed must be based upon the particular circumstances of each individual case, and in the course of the trial and the sentencing hearing a trial judge has a better opportunity to consider these circumstances than does a court of review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Thus, it is a well-accepted rule that absent an abuse of discretion a sentence by the trial judge should not be altered upon review. *Perruquet,* at 156.

■■   Here, the record indicates that the trial judge did not abuse his discretion in setting the maximum sentence at 42 years. He took four factors into consideration in sentencing the defendant: the expected

rehabilitation of defendant, the necessity of punishment for defendant, the effect of the sentence on the community and other possible offenders, and the necessity of removing defendant from society because of the danger he presented. This approach recognizes both concerns of the 1970 Illinois Constitution, article I, section 11—that is, the seriousness of the offense charged and the objective of restoring the offender to useful citizenship. Specifically, the trial judge stated that he felt defendant's prospects for rehabilitation were good, and undoubtedly this was a consideration when the trial judge set the minimum sentence at the shortest allowed by statute. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(1).) Given the viciousness of the repeated shooting and the brevity of the minimum sentence, the maximum sentence imposed is not improper.

Judgment affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.