THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
SUSAN DELANEY, Defendant-Appellant.

First District (4th Division)    No. 76-995

Opinion filed August 3, 1978.

LINN, J., dissenting.

Martin S. Gerber, of Gerber & Gerber, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan Cherry, and Richard Heytow, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from the circuit court of Cook County. The defendant, Susan Delaney, was convicted of voluntary manslaughter after a bench trial and was sentenced to a term of 5 to 15 years in the Illinois State Penitentiary. The defendant appeals from the conviction and the sentence.

On appeal the defendant raises five issues for review: (1) whether or not the defendant was proven guilty beyond a reasonable doubt; (2) whether or not the conviction for voluntary manslaughter should be reduced to involuntary manslaughter; (3) whether or not the defendant's fifth amendment rights were violated; (4) whether or not there was prejudicial cross-examination; and (5) whether or not the sentence imposed by the trial court was excessive.

The facts of the case are the defendant had been dating the deceased, Thomas Meyering, for a period of 1½ years. In July of 1975, the deceased had another girl staying with him in his apartment. The defendant testified she knew the deceased and this other girl had sexual relations previously. The defendant phoned the girl the day before she was to come to visit and the girl testified the defendant asked her not to come to Chicago. The defendant phoned the girl at the deceased's apartment and visited her while the deceased was at work. Several times, they discussed the sexual relationship between the deceased and the girl who was staying with him. On July 11, 1975, the deceased and the defendant were in the middle of an argument over the status of their relationship and the defendant shot and killed the deceased with a gun belonging to her father. On July 23, 1975, a Chicago police officer talked with the girl who had been staying with the deceased. The girl told the officer the defendant had said she would kill the deceased before she would see him with anyone else. The officer then went to the gun registration section of the Chicago Police Department and found a .38-caliber revolver with the same characteristics of the gun the deceased was shot with, registered to the defendant's father. The defendant was then taken to the police station, advised of her rights, and she then admitted she had shot and killed the deceased. The defendant subsequently was indicted for murder. After a bench trial she was found guilty of the lesser included offense of voluntary manslaughter.

■■  The first issue raised by the defendant is whether or not the State proved her guilty beyond a reasonable doubt. The defendant urges the

State did not exclude every reasonable hypothesis of innocence. It is the law in this State the prosecution must exclude every reasonable hypothesis when the evidence of the defendant's guilt is entirely circumstantial. In the instant case the evidence adduced at trial by the State included the statement of the defendant in which she admitted shooting and killing the deceased. This is direct evidence and the State is not required to exclude every reasonable hypothesis where the defendant has made such a statement. *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *People v. Carbona* (1975), 27 Ill. App. 3d 988.

■■ The second issue raised by the defendant is the evidence does not prove the defendant guilty of voluntary manslaughter as there is no evidence the defendant acted under a sudden and intense passion. The evidence shows the defendant had threatened to kill the deceased a number of times prior to the night in question. The defendant admitted she had threatened the deceased with the gun in question and once had chased him for half a block with her finger on the trigger. The defendant admits she shot and killed the deceased in the course of an argument over whether or not they were going to cease their relationship. Upon such evidence it was proper for the trial court to conclude the defendant was guilty of voluntary manslaughter. Whether or not any particular conduct is sufficient to inflame the passions of the defendant so as to constitute a serious provocation within the definition of voluntary manslaughter, is a matter uniquely within the province of the trier of fact. *(People v. Tucker* (1971), 3 Ill. App. 3d 152.) The finding of guilty was proven beyond a reasonable doubt and we will not disturb the finding on review.

■■ The third issue raised by the defendant is whether or not her fifth amendment rights were violated when the State elicited testimony on rebuttal which showed the defendant had lied to the police. This exact situation was discussed by the United States Supreme Court in *Doyle v. Ohio* (1976), 426 U.S. 610, 619 n. 11, 49 L. Ed. 2d 91, 98 n. 11, 96 S. Ct. 2240, 2245 n. 11, where the court said:

> "It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculptory version of events and claims to have told the police the same version upon arrest. In that situaton the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest. Cf. *U.S. v. Fairchild*, 505 F.2d 1378, 1383."

In the instant case the rebuttal testimony did not violate the fifth amendment rights of the defendant as it only went to challenge her testimony on direct examination.

■■■ The fourth issue raised by the defendant is whether or not the cross-examination concerning her sexual relationship with the deceased

was improper. On her direct testimony the defendant testified as to the sexual relationship between herself and the deceased. Counsel for the defendant raised the question a number of times and the defendant testified at great length concerning their sexual activity. The law in Illinois is quite clear it is proper for a prosecutor to pursue a line of questioning which was initiated by the defendant. (*People v. Briggman* (1974), 21 Ill. App. 3d 747.) The defendant raised the issue in the trial court and cannot now complain about it here.

■■ The fifth issue raised by the defendant is whether or not the sentence imposed by the trial court is excessive. In *People v. Perruquet* (1977), 68 Ill. 2d 149, the Illinois Supreme Court stated the trial court is normally in a superior position to determine the correct sentence and a reviewing court may not alter such a sentence absent an abuse of discretion. In the instant case we have read the trial judge's reasoning, as he gave it in open court, for imposing the sentence of 5 to 15 years in the Illinois State Penitentiary. We cannot say, given the serious nature of the offense, the trial judge abused his discretion.

Accordingly, for the reasons contained herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON, P. J., concurs.

Mr. JUSTICE LINN, dissenting:

I must respectfully dissent from the majority's holding that the record contains sufficient proof of the requisite mental state necessary to support defendant's conviction for voluntary manslaughter.

Although charged with murder, a defendant may properly be found guilty of the lesser offense of voluntary manslaughter but only if the evidence adduced at trial establishes the necessary elements of that offense. (*People v. Thompson* (1973), 11 Ill. App. 3d 752, 297 N.E.2d 592; *People v. Clark* (1973), 15 Ill. App. 3d 756, 305 N.E.2d 218.) Where the record does not contain proof of the elements of voluntary manslaughter, the conviction must either be reversed, or reduced to involuntary manslaughter if the record supports such a reduction. *People v. Thompson* (1973), 11 Ill. App. 3d 752, 297 N.E.2d 592; *People v. Dodson* (1973), 11 Ill. App. 3d 709, 297 N.E.2d 367.

A conviction for voluntary manslaughter requires proof that the defendant acted under a sudden and intense passion resulting from serious provocation sufficient to incite a reasonable person (Ill. Rev. Stat. 1975, ch. 38, par 9—2(a)), or that the defendant believed the killing was justified but that belief was unreasonable (Ill. Rev. Stat. 1975, ch. 38, par.

9—2(b)). In my opinion, the facts of this case do not support a voluntary manslaughter conviction on any theory.

Since there is no claim made that defendant acted in self-defense or believed that the killing was justified, the conviction cannot be based on subsection (b) of the statute. Thus, in order to sustain the conviction, there must be proof that at the time of the killing the defendant was acting under a sudden and intense passion resulting from serious provocation caused by the deceased. The only categories of serious provocation which have been recognized under the statute are "substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse; but not mere words or gestures * * *." *People v. Crews* (1967), 38 Ill. 2d 331, 335, 231 N.E.2d 451, 453, citing Ill. Ann. Stat., ch. 38, par. 9—2 (Smith-Hurd).

The record in this case does not contain evidence of a single specific act or occurrence of serious provocation sufficient to excite sudden and intense passion in a reasonable person. Rather, the record tells the story of a declining relationship and the attendant despondency and hurt feelings of the jilted party. (See *People v. Pequino* (1978), 62 Ill. App. 3d 75, 379 N.E.2d 30.) In a case factually similar to the one under consideration, a quarrel about a relationship between the parties was held insufficient to result in serious provocation within the meaning of the statute. *People v. Jacobs* (1976), 44 Ill. App. 3d 290, 357 N.E.2d 821.

I cannot agree that the events cited by the majority in support of their holding are sufficient to incite the requisite sudden passion. Defendant and the deceased had quarreled for several weeks over the termination of their relationship and the deceased's apparent interest in other women. Several days before the killing the defendant had pointed a gun at the deceased; however, sufficient time had passed to cool any passions aroused by that moment and to allow the voice of reason to be heard. (*People v. Clark* (1973), 15 Ill. App. 3d 756, 305 N.E.2d 318.) The argument which ensued on the night of the shooting was repetitious of many similar arguments between the defendant and the deceased. In fact, the events of that evening, including the brandishing of the weapon, were nothing at all new to the parties involved. The reoccurence of this scene neutralized its potentially provocative effect.

Where, then, is the element of provocation sufficient to incite sudden and intense passion in a reasonable man? The only arguable reason for a finding of serious provocation is based on the nature of the relationship between the victim and the defendant. On this point the State relies on the case of *People v. Newberry* (1970), 127 Ill. App. 2d 322, 262 N.E.2d 282, where the court held that the circumstances of the relationship between the defendant and the deceased justified the giving of a voluntary

manslaughter instruction. The distinction between *Newberry* and the instant case is clear. The defendant in *Newberry* had been seeing the deceased for several years and had left his wife because of this relationship. The defendant had given the deceased money throughout their relationship. Several weeks before the shooting the deceased severed the relationship and refused to see the defendant. On the evening of the shooting the defendant attempted to reconcile with the deceased, threatening to kill himself when she refused him. In a rude and obscene manner the deceased replied that she did not care what the defendant did. The defendant immediately thereafter drew his gun and shot the deceased.

The defendant's depressed emotional condition in *Newberry* was considered a relevant factor in determining whether the rude and obscene language and offensive manner displayed by the deceased at the time of the incident was sufficiently serious to provoke the defendant. Here, even if defendant's despondency is taken into account, there is no evidence of that essential additional act of provocation on the night of the incident to incite the passions of defendant. (See *People v. Pequino* (1978), 62 Ill. App. 3d 75, 379 N.E.2d 30; *People v. Pecora* (1969), 107 Ill. App. 2d 283, 246 N.E.2d 865, *cert. denied* (1970), 397 U.S. 1028, 25 L. Ed. 2d 538, 90 S. Ct. 1274.) I must conclude that mere evidence of defendant's continuing disagreement with the deceased is insufficient to satisfy the statutory requirement that defendant had acted under sudden and intense passion resulting from serious provocation.

While I cannot agree that the evidence is sufficient to sustain defendant's conviction for voluntary manslaughter there is sufficient evidence of reckless conduct to bring defendant's actions within the statutory definition of involuntary manslaughter. (Ill. Rev. Stat. 1975, ch. 38, par. 9—3.) Although defendant stated that she did not intend to kill the deceased, the evidence indicates his death directly resulted from defendant's reckless use of a loaded gun. As stated in *People v. Bauman* (1975), 34 Ill. App. 3d 582, 589, 340 N.E.2d 178, 183: "The pointing of a loaded revolver at another is such a gross deviation from the standard of care which a reasonable person would exercise that it constitutes recklessness." In my opinion the evidence as a whole proves the defendant guilty of involuntary manslaughter beyond a reasonable doubt.

For these reasons, I would, under the power granted by Supreme Court Rule 615(b)(3) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)(3); see *People v. Goolsby* (1977), 45 Ill. App. 3d 441, 359 N.E.2d 871), reduce the degree of the offense for which defendant was convicted from voluntary to involuntary manslaughter and return the case to the trial court for resentencing.