THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PATRICK FAUSZ, Defendant-Appellant.

Fifth District    No. 81-211

Opinion filed May 26, 1982.

Marvin W. Goldenhersh, of Goldenhersh and Goldenhersh, of Belleville, for appellant.

Alan E. Stumpf, State's Attorney, of Waterloo (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

The defendant, Patrick Fausz, was charged by information with the murder of Michael Lux and the attempted murder of James D. Weber. A jury found the defendant not guilty of the offenses of murder, attempted murder, and involuntary manslaughter but convicted him of the offense

of voluntary manslaughter. The trial court entered a judgment of guilty of voluntary manslaughter and sentenced defendant to imprisonment for a term of three years.

On appeal the defendant raises three issues: (1) whether the defendant was properly convicted of voluntary manslaughter; (2) whether the defendant was prejudiced by the presence of the decedent's family and friends during trial; and (3) whether the defendant's sentence was an abuse of discretion.

On September 3, 1980, Mr. Lux, Mr. Weber and Rodney Godier were out drinking together. At approximately 10:30 p.m. they arrived at a tavern owned and operated by defendant in Boxtown, Illinois. While at this establishment, they overheard the defendant tell Joe Benton that he was placing the two bottles of whiskey he owed him inside his pickup truck. The three companions "teased" the defendant, suggesting that he should place the whiskey in Weber's automobile instead of Mr. Benton's pickup truck.

Soon after midnight, Mr. Lux, Mr. Weber, and Mr. Godier left the tavern building and loitered in the parking lot. The defendant watched them from the door. At one point, Mr. Weber walked over to Mr. Benton's pickup truck but walked away when approached by Shinny Juelfs, a patron of the tavern. The trio then got into Mr. Weber's car, backed down the road from the tavern and smoked some marijuana. Afterward, they drove the car without lights slowly forward to a location south of the tavern, then left the vehicle and urinated.

The defendant, becoming suspicious of the trio's activities, obtained the pistol he kept on the premises for protection and went into the parking lot. He observed Mr. Weber approach Mr. Benton's pickup truck. The defendant confronted Mr. Weber and told him to leave. When Mr. Weber moved towards him, the defendant advised him that he had a gun and repeated his order to leave. Mr. Weber walked back to his car.

A short time later, the defendant observed Mr. Lux near Mr. Benton's pickup truck and went out into the dimly lit parking lot to confront him. Defendant believed that Mr. Lux had taken the two bottles of whiskey and ordered him to stop. Mr. Lux, however, began running. According to defendant, he fired a shot into the air and then attempted to fire over Mr. Lux' head. Mr. Lux was struck by one of the shots but made it back to Mr. Weber's car, which was immediately driven off. The defendant and Joe Faulkner, another patron of the tavern, entered an automobile and pursued them. When the automobile containing the defendant and Mr. Faulkner drew near to Mr. Weber's automobile, the defendant fired a third shot which struck Mr. Weber's left front fender. After the defendant and Mr. Faulkner ceased their pursuit, Mr. Weber drove Mr. Lux to the Red Bud Hospital in Prairie Du Rocher, Illinois, where Mr. Lux was

pronounced dead. It was later determined that Mr. Lux' death was caused by a bullet wound in the back.

At about 4 a.m. following the shooting, deputy sheriffs Tom Kocher and Darrell Hoffman went to the tavern to conduct an investigation. Both the defendant and Mr. Faulkner denied any knowledge of a gun or shooting. A few hours later, the deputies returned to the tavern with a search warrant. After searching the premises, the deputies advised the defendant that he was under arrest for murder. The defendant appeared shocked and surprised and gave the deputies a statement regarding what had occurred.

At trial the defendant maintained that his shooting of Mr. Lux was accidental and that he had no intention of causing any injury. Numerous witnesses testified regarding the defendant's reputation for being a peaceful and law abiding citizen. Defendant testified in his own behalf that he fired his pistol only to scare Mr. Lux and the others and to force them to stop. He stated that he had no intention of hurting anyone and that he never thought that he had a right to shoot the three individuals.

On appeal, defendant first contends that the evidence is not sufficient to support a voluntary manslaughter instruction or verdict.

■■ A person who kills another without legal justification commits voluntary manslaughter if, at the time of the killing, he acts under sudden and intense passion resulting from serious provocation or if, at the time of the killing, he has an unreasonable belief that the circumstances were such, if they existed, as would justify or exonerate the killing under the Criminal Code. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(a) and (b).) Where the evidence fails to establish either of these mental states, a conviction for voluntary manslaughter cannot stand. See *People v. Dodson* (1973), 11 Ill. App. 3d 709, 713-14, 297 N.E.2d 367, 370-71.

■■ During the instructions conference, the State, in response to the defendant's objection to the giving of a voluntary manslaughter instruction, argued that the defendant's testimony that he fired his pistol to protect the two bottles of whiskey in Mr. Benton's pickup truck was sufficient to establish provocation which warranted a voluntary manslaughter instruction. This contention must be rejected because mere trespass to property does not amount to sufficient provocation to establish the offense of voluntary manslaughter. (See *People v. Free* (1976), 37 Ill. App. 3d 1050, 1052, 347 N.E.2d 505, 507; *People v. Hammock* (1979), 68 Ill. App. 3d 34, 39, 385 N.E.2d 796, 801.) The trial court was apparently misled by this argument and as a consequence granted the State's request for a voluntary manslaughter instruction.

■■ On appeal, the State advances an alternative theory that the defendant's testimony allows an inference that the defendant's actions were the result of an unreasonable belief that he had to protect himself from bodily

harm. In support of this position, the State points principally to the fact that the defendant was aware of the fact that Mr. Weber had previously "kicked the living daylights" out of a person and that Mr. Weber "started for him" when the defendant confronted him near Mr. Benton's pickup truck. We find, however, that the evidence, including the defendant's own testimony, indicates that the defendant acted to protect property and not himself when he fired in the direction of the fleeing Mr. Lux. Moreover, the defendant's testimony which suggests a fear of Mr. Weber does not justify a belief, reasonable or otherwise, that Mr. Lux, who had no reputation for violence and who was unknown to the defendant at the time of the shooting, was in any way a danger to the defendant.

The applicable principle governing this case was set forth by our supreme court in *People v. Newman* (1935), 360 Ill. 226, 231-32, 195 N.E. 645, 647. There the court stated:

> "[W]here the evidence is such that it admits of but one of two conclusions, either that the defendant is guilty of murder or is innocent, the giving of an instruction and form of verdict on manslaughter is improper, and where given at the request of the People amounts to error requiring a reversal of the judgment if the accused be found guilty of the lesser crime. [Citations.]"

■■ The State seeks to distinguish *Newman* on the ground that it was decided prior to the adoption of section 2—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 2—9), which defines "Included offense." It is suggested that under this statute, it is permissible for a jury to convict a defendant of a lesser included offense regardless of whether the requisite mental element is proved at trial. We disagree. Neither the jury's historic power of leniency nor the fact that the defendant could have been convicted of a greater offense allows a conviction for an offense where all the elements are not proved. (See *People v. Dodson* (1973), 11 Ill. App. 3d 709.) In this regard, the cases relied upon by the State implicitly recognize that a defendant may be convicted of voluntary manslaughter when charged with murder only where the evidence warrants such a finding. See, *e.g., People v. Sykes* (1977), 45 Ill. App. 3d 674, 678, 359 N.E.2d 897, 900; *People v. Lewis* (1977), 51 Ill. App. 3d 109, 116-17, 366 N.E.2d 446, 451.

Additionally, we perceive no change in the law as set forth in *Newman* resulting from the adoption of section 2—9 of the Criminal Code. This statute does not purport to allow convictions where the elements of a lesser included offense are not adequately established. We must reject the State's contention that the adoption of section 2—9 obviated the *Newman* holding that where there is no evidence in the record upon which a manslaughter verdict can be based, the giving of such an instruction constitutes reversible error. See *People v. Echoles*

(1976), 36 Ill. App. 3d 845, 854-55, 344 N.E.2d 620, 627-28; *People v. McMurry* (1965), 64 Ill. App. 2d 248, 252-53, 212 N.E.2d 7, 9.

The State alternatively requests that we exercise our power under Supreme Court Rule 615(b)(3) (73 Ill. 2d R. 615(b)(3)) and reduce the degree of the offense to involuntary manslaughter. There is some merit to the State's observation that the defendant acted with such recklessness as to warrant a conviction for involuntary manslaughter under section 9—3 of the Criminal Code of 1961. (Ill. Rev. Stat. 1979, ch. 38, par. 9—3; see *People v. Bauman* (1975), 34 Ill. App. 3d 582, 340 N.E.2d 178.) The State's request ignores, however, the fact that the jury in this case specifically acquitted the defendant of the offense of involuntary manslaughter. We cannot usurp the jury's factual determination in this regard and enter a judgment of guilty for an offense for which the defendant was acquitted. Therefore, we must refuse the State's request to reduce the degree of the offense.

The evidence fails to establish the defendant's guilt of voluntary manslaughter, and the defendant was acquitted of all other offenses upon which the jury was instructed. Therefore, we reverse the judgment of the circuit court of Monroe County without remand. In this regard, we note that the court in *People v. Thompson* (1973), 11 Ill. App. 3d 752, 297 N.E.2d 592, was presented with a case in which the defendant had been charged with and tried for murder, but the jury found him guilty of the lesser included offense of voluntary manslaughter. The court there observed that the voluntary manslaughter conviction could stand only if the evidence adduced at trial established the necessary elements of the lesser included offense. The conviction in *Thompson* was reversed without remand, the court finding that the evidence was insufficient for the purpose of proving defendant guilty of voluntary manslaughter. The court based its refusal to remand on the fact that the defendant's conviction of the lesser crime amounted to an acquittal of murder. In the case at bar, defendant was expressly found not guilty of murder by the jury.

Because of our decision, we need not address the other issues raised by the defendant.

For the foregoing reasons, the judgment of the circuit court of Monroe County is reversed.

Reversed.

JONES and WELCH, JJ., concur.