(No. 19052.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EUGENE MCLAUGHLIN, Plaintiff in Error.

*Opinion filed December 20, 1929.*

HARRINGTON, GOLAN & McDONNELL, (JOSEPH T. HAR-
RINGTON, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E.
CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD
E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the
court:

Eugene McLaughlin was indicted in the criminal court
of Cook county for an assault upon Walter J. Neumann
with intent to commit robbery. A jury found McLaughlin
guilty of the charge and he was sentenced to the peniten-
tiary. By this writ of error he seeks a review of the record.

On March 22, 1926, Walter J. Neumann, a salesman
employed by W. R. Neumann and Company, wholesale
jewelers, left the firm's place of business at Chicago, in an
automobile bound for South Bend, Indiana. He had in his
custody two cases containing jewelry worth approximately
fifty thousand dollars. When he reached Thirty-first street
on South Parkway the traffic signal obliged him to stop.
At this point, according to Neumann's testimony, the plain-
tiff in error, approaching from the rear, jumped on the left
running-board of the automobile, opened the door, took
from his overcoat a revolver, pointed it at Neumann's side,

and in profane language commanded him to move to the right. Neumann shouted and screamed and a struggle ensued in which the plaintiff in error gained the driver's seat. When the signal was changed permitting south-bound traffic to proceed, he drove the car across the intersecting street, but Neumann succeeded in stopping it at the curb. A police officer, who had observed the struggle between the two men, approached, drew his gun and ordered the plaintiff in error out of the automobile. Plaintiff in error was searched but no weapon was found in his possession. While the search was in progress, Neumann ran back to the car and remarked, "Let me get my gun and I will blow his head off." Neumann obtained the revolver, flourished it and finally pointed it toward the police officer who promptly disarmed him. A crowd gathered and Neumann and the plaintiff in error were taken to a police station. At the time of his arrest, the plaintiff in error, speaking of the assault, said to the police officer, "There is nothing to it. It is just an argument." . On the trial Neumann testified that he had not determined upon the streets in the city over which he would drive when he left his employer's place of business and that no person knew the route he would follow; that the gun which he took from his automobile did not belong to him but that it was the weapon which the plaintiff in error used in making the assault. The police officer, called by the prosecution, testified that when Neumann went to his automobile for the revolver, he referred to it as "my gun"; that he, the officer, first saw the revolver in Neumann's hands; that it was loaded, and that Neumann said nothing about jewelry until after he reached the police station.

Many errors are assigned and argued by the plaintiff in error. One is that the cross-examination of the police officer, a witness for the prosecution, was unduly restricted. Counsel for the plaintiff in error sought to elicit from him

that the latter, while on the way to the police station, said in explanation of the assault, that Neumann had been "playing around" with his wife. An objection to the question was sustained. When the alleged statement was made not only had the struggle between Neumann and the plaintiff in error ended, but they had been separated and were being conveyed to the police station in different automobiles. The statement was not so intimately connected with the assault as to indicate that it was made without premeditation or with no purpose of self-exculpation. A self-serving declaration, not so intimately interwoven with the principal fact or event that it may be regarded as a part of the transaction itself, and made after opportunity for premeditation is afforded, is not admissible. *People* v. *Jarvis,* 306 Ill. 611; *Lander* v. *People,* 104 id. 248.

It is next contended that the trial court erred in allowing the prosecution to impeach two of its witnesses. The first had testified on direct examination that his attention was attracted to the occurrence at South Parkway and Thirty-first street by some person shouting. He was then asked whether shortly after the assault he had signed a statement in which he said that he heard Neumann call for help. He answered that he did not hear him call for help but heard him shout. The question was repeated in a form somewhat different and the witness answered that he did not remember what he had said two years before. The statement was produced, and after reading it, the witness admitted that he had signed it. He was then asked whether he recollected stating that he heard Neumann call for help, and he was permitted to answer over an objection by the plaintiff in error that since the assertion appeared in the statement he must have made it. A similar situation developed during the examination of the second witness. He was asked by the assistant State's attorney whether he had heard any conversation in which the plaintiff in error engaged at the time of the occurrence in question. He an-

swered that he recollected no such conversation. He was then asked whether he had exhausted his recollection concerning utterances by the plaintiff in error at the time and he answered that the period which had elapsed since the occurrence was too long for him to remember what the plaintiff in error had said. To refresh the recollection of the witness, the assistant State's attorney then asked him whether, at the time in question, when his car stood in front of Neumann's automobile, the plaintiff in error said to him, "Let us by. He is having a fit." The answer was in the negative. Upon further interrogation, the witness admitted that he had signed a written statement at the police station, and the statement was produced. Parts of it, the witness testified, refreshed his recollection, but he added that two years had elapsed since he signed it; that when the statement was made, the occurrence was fresh in his mind and that he then told what he had seen and heard. Each of these two witnesses was merely given an opportunity to refresh his memory. If a witness gives testimony which differs from a previous statement made by him, so that his testimony is a matter of surprise to the party calling him, the latter may direct his attention to the former statement for the purpose of refreshing his memory or awakening his conscience. (*People* v. *Cotton*, 250 Ill. 338; *People* v. *Lukoszus*, 242 id. 101). The trial judge is, to a great extent, enabled to determine the propriety of such questions from the appearance and manner of the witness, and permission to ask them should be left largely to the judge's discretion. (*People* v. *Cotton, supra*). That discretion, it appears, was properly exercised in the present case.

Another contention is that the trial judge made remarks during the direct examination of Neumann which were prejudicial to the plaintiff in error. Neumann was asked whether at the time of the assault he had a gun in his possession. A general objection to the question interposed by

counsel for the plaintiff in error was overruled and the witness answered in the negative. Counsel then explained his objection by stating that the question was leading and called for a conclusion. The assistant State's · attorney, addressing counsel opposed to him, began to reply, whereupon the court interrupted him by saying: "Proceed. There is nothing before the court. You should be satisfied, Mr. State's attorney, the court is with you." It is argued that the concluding sentence probably led the jury to believe that the court's opinion upon the evidence was favorable to the prosecution. The sentence was unfortunate. Yet it followed immediately upon the discussion between counsel concerning the validity of an objection interposed by the defense during the examination of a witness and over- ruled by the court. In this situation the jury could hardly regard it other than as an admonition to counsel for the prosecution that when he had obtained a ruling sustaining a question asked by him further argument against the ob- jection or in support of the question was unnecessary. Moreover, no objection was made nor was an exception taken to the court's remarks. The question, for that rea- son, is not preserved for review. *People* v. *Steinbuch,* 306 Ill. 441; *People* v. *Surace,* 295 id. 604; *People* v. *Abrams,* 249 id. 619.

Counsel for the prosecution in his closing argument to the jury referred to the gun admitted in evidence and said: "That is the kind of gun gun-men use in Chicago." An objection to the remark was sustained and the jury were instructed to disregard it. Counsel proceeded and later, in referring to the grand jury said: "They indict these de- fendants, these gun-men, these hoodlums and they brought in that indictment and charged Eugene McLaughlin * * * with assault to rob." On objection · this statement was stricken. Counsel in concluding his argument asserted that if the jury returned a verdict of not guilty they would be "putting back on the streets a gun-man who may ply his

trade with you." This statement likewise, on objection, was stricken and the jury were told to disregard it. The plaintiff in error complains that these remarks transgressed the limits of legitimate argument and were highly prejudicial to him. The defendant in error virtually concedes that the remarks were improper, but insists that they were harmless because, upon objections interposed, they were excluded. It often has been held that the effect of remarks calculated to arouse the prejudices of the jurors against the defendant is not removed by striking the objectionable remarks. (*People* v. *Black*, 317 Ill. 603; *People* v. *Chrfrikas*, 295 id. 222; *People* v. *Green*, 292 id. 351; *People* v. *McMahon*, 244 id. 45). A fair and impartial trial is guaranteed to all persons, whether innocent or guilty, and it is the duty of the courts to uphold this guaranty. (*People* v. *Black, supra; People* v. *Gardiner*, 303 Ill. 204; *People* v. *Newman*, 261 id. 11; *McDonald* v. *People*, 126 id. 150). An accused person has a right to a trial by jury and the question is not whether a reviewing court may believe him innocent or guilty but what the jury's verdict would have been had the inflammatory remarks not been made. (*People* v. *Newman, supra*). In the present case it cannot be said that the plaintiff in error was not prejudiced by the unwarranted remarks of counsel for the prosecution.

The fifteenth instruction given by the court of its own motion, the plaintiff in error argues, was erroneous. This instruction begins with the statement that circumstantial evidence is competent legal evidence, and proceeds: "It is in criminal cases the proof of such facts and circumstances connected with or surrounding the commission of the crime charged as would tend to prove the guilt or innocence of the party charged." The jury are then cautioned to exercise care in determining what facts and circumstances are proved with such certainty as would justify accepting them as established, and the instruction concludes: "and no fact or circumstance ought to be accepted or treated or consid-

ered as proven unless such fact or circumstance is proven beyond a reasonable doubt and to a moral certainty." The instruction requires every fact or circumstance tending to prove the defendant's guilt or innocence to be proved beyond a reasonable doubt. A fact or circumstance tending to prove innocence need not be established by so high a degree of proof. (*People* v. *Spranger,* 314 Ill. 602; *People* v. *Sawhill,* 299 id. 393; *People* v. *Rosenberg,* 267 id. 202). The instruction therefore imposes upon the defendant a heavier burden than the law requires. It contravenes a fundamental rule of law and was held erroneous in *People* v. *Spranger, supra.*

The sixteenth instruction given at the request of the prosecution told the jury that the intent alleged in the indictment "may be inferred from the facts and circumstances shown by the evidence." The plaintiff in error contends that the jury might construe this statement as a declaration by the court that the intent to rob had been established in the instant case. Intent may be proved by circumstantial evidence but whether the facts and circumstances shown in the particular case are such as to justify an inference of its existence as charged is a question for the jury and not the court. There was no direct evidence of an intent to rob in this case, and to establish that material element of the crime charged, it would have to be inferred from the facts and circumstances proved. The jury might readily understand the instruction to assume the presence of the required intent. The instruction was held erroneous in *People* v. *Johnson,* 333 Ill. 469, and should not have been given.

Complaint is made of other instructions but the criticisms made upon them are without merit and do not require detailed discussion. Two additional contentions for a reversal of the judgment, namely, that two jurors concealed facts on their *voir dire* examination which would have disclosed their disqualifications to act, and that the evidence

is not sufficient to sustain the verdict, need not be considered since a new trial is necessary.

The judgment of the criminal court is reversed, and the cause is remanded to that court.

*Reversed and remanded.*