THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALBERT DYER, Defendant-Appellant.

First District (1st Division)   No. 76-143

Opinion filed March 21, 1977.

James Geis and Brenda E. Richey, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and Gary W. Adair, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Albert Dyer, was charged with armed robbery in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). After a jury trial, he was found guilty and sentenced to 4 to 12 years. Defendant appeals, contending that he was denied a fair trial because (1) he was unable to present his compulsion defense for the reason that his state of mind testimony was restricted and (2) the prosecutor introduced evidence of other crimes and commented upon it even though an objection to it had been sustained and the jury instructed to disregard it.

Jackie Tolbert testified that she and Elnora Gilkey worked from 3:30 p.m., April 1, 1974, to 12 a.m., April 2, 1974. After work, Gilkey drove Tolbert's Electra automobile to the Food Basket at 79th Street and Yates, in Chicago. They were parked in the store's lot when a man, later identified as Gabriel Slater, asked for a match. A short time later Tolbert heard steel hit the driver's side window and saw Slater pointing a pistol

toward them. He had Gilkey open the driver's door for him. Slater opened the doors for his companions, the defendant and Julius Small. Slater and Small sat in the front seat, with the women between them. Tolbert identifed the defendant as the man who sat in the back seat. After they were all in the car, Slater gave the pistol to defendant. While Slater drove, defendant pointed the gun at Gilkey's head. Several times defendant said the women would have to be killed. Once he said the women should be taken into an alley and killed. Defendant told Slater he had the gun cocked and pointed at the women. He repeatedly used abusive language to refer to the women. Small took $10 from Tolbert. When she and Gilkey were let out of the automobile, defendant still had the gun. Subsequently the women called the police, told their story to the responding officers and went home.

On cross-examination, Tolbert stated that defendant did not take the money from her; on redirect, she said that defendant held the gun when the money was taken.

Elnora Gilkey testified that Slater approached her side of the car and asked for a match. He later hit the window with a pistol and pointed it at her. When they were driving around in the vehicle, defendant had pointed the pistol at her head. Once she looked at defendant in the back seat and he told her that if she looked around again he would blow her brains out. She also recalled that defendant suggested that the women be taken into an alley to be killed. Defendant had offered to drive but Slater refused. Gilkey said she did most of the talking to the police officers that morning.

On cross-examination, Gilkey admitted she originally told the police the Electra's license number was DK 6444. That was incorrect, so she called the local police station and gave the correct number, BP 8662.

Officer Richard Michau of the Alsip Police Department testified that while he was on duty on April 2, 1974, he observed a wrecked Electra, with license number BP 8662, on 123rd Street in Alsip, Illinois. When he approached the vehicle he observed defendant and Julius Small. Defendant told Michau that the Electra belonged to Slater and later said it belonged to Slater's aunt. At the accident scene defendant gave no information about the car. He gave no information about it until he had been confronted with information that the vehicle was stolen. Defendant told Michau that Slater gave him the gun after the women were let out of the car.

Officer Ellman of the Chicago Police Department was called as a witness by defendant. He stated that he interviewed Tolbert and Gilkey in the presence of Officer Donovan. He testified that he was given DK 6444 for the Electra's license number. He never heard any other license number for Tolbert's vehicle.

Defendant testified in his own behalf: Defendant, Slater and Small were walking toward the Food Basket at 79th Street and Yates when Slater said he thought he knew the women in the Electra. Slater approached the vehicle and Small and defendant entered the store to buy cigarettes. After leaving the store, defendant saw Slater standing by the automobile. Slater turned toward defendant and Small, pointed a gun at them and told them to get into the automobile. Defendant said he got in because he was scared. He thought he was going to be shot. Defendant did not know whether he let Small into the vehicle because he was scared. Slater never passed him the gun. Julius Small said that the ladies could not be let go. Defendant said nothing while he was in the car. After the ladies were let out of the car, Slater forced defendant and Small to go into a tavern with him. They left the tavern in the car, with Slater driving over 100 miles per hour. Defendant grabbed for the gun. In reaction, Slater braked and caused the vehicle to roll over and come to rest in the trees where Officer Michau found it. Defendant told the officer the car was stolen.

On cross-examination, defendant maintained that he never called the women abusive names, never handled the gun, never pointed the gun at the women and never suggested pulling into an alley to kill the women.

■■ Defendant contends that he was denied a fair trial because the trial court prevented him from fully presenting his defense of compulsion by restricting testimony about his state of mind. Reversible error may be committed where the defendant is prevented from testifying about his state of mind. (*People v. Biella* (1940), 374 Ill. 87, 28 N.E.2d 111.) However, in this case defendant testified that Slater pointed a gun at him and told him to get into the automobile. He stated that he entered the vehicle because he was scared. He thought he was going to be shot. Defendant could not remember whether he opened a door for Small because he was scared. Slater did not trust the defendant sitting behind him. Slater forced him into a tavern. On the record before us, defendant was able fully to present his defense to the jury despite the excluded questions. (See *People v. Millet* (1965), 60 Ill. App. 2d 22, 208 N.E.2d 670.) There was no prejudice to the defendant in the exclusion of certain questions. See *People v. Nurse* (1975), 34 Ill. App. 3d 42, 339 N.E.2d 328.

■■ Defendant also contends that his conviction should be reversed because the State introduced evidence of other crimes which was excluded but commented upon by the State. On direct examination, Elnora Gilkey stated that the three men said they were going to Hammond, Indiana, to commit a murder and a burglary. That testimony was stricken and the jury was told to disregard it. During the State's argument, the testimony was commented on:

"[Assistant State's Attorney]: * * * Both women told you that there was mention that the three men needed the car to go to Indiana to kill someone. They were talking then about killing someone, and both women told you—

[Attorney for Defendant]: Judge, I am going to object to that. There has been absolutely no evidence, no evidence at all in the record, about going to Indiana to kill someone. For that reason, I ask for a mistrial.

The Court: The jury has heard the evidence. Just argue what the jury remembers, what the evidence is."

After reviewing the record, we find the evidence of guilt so overwhelming that the jury could not have acquitted defendant even if the above testimony and comment were not a part of the record. *People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347, *cert. denied*, 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290, and 368 U.S. 978, 7 L. Ed. 2d 440, 82 S. Ct. 484; *People v. Allen* (1971), 1 Ill. App. 3d 197, 272 N.E.2d 296.

■■ However, we neither condone nor approve the prosecutor's misconduct in adducing the evidence and commenting upon it after the trial court had ruled. But for the overwhelming evidence of defendant's guilt in the record before us, the prosecutor's misconduct would require a new trial. See *People v. Van* (1973), 9 Ill. App. 3d 1027, 293 N.E.2d 660 (abstract).

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.