THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EMIL BANASIK, Defendant-Appellant.

First District (5th Division)    No. 79-2364

Opinion filed February 20, 1981.

James J. Doherty, Public Defender, of Chicago (Jeffrey R. Martin, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and John M. Hynes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—3(a)) and possession of a hypodermic syringe without a prescription (Ill. Rev. Stat. 1977, ch. 38, par. 22—50) and was sentenced to 364 days on the battery conviction and three months on the possession conviction, with the sentences to run concurrently. On appeal, he contends that (1) the trial court erroneously admitted the police arrest card of defendant into evidence, and (2) the prosecution improperly examined prospective jurors on questions of law during the *voir dire*.

Defendant and Jane Quanstrom were living together in her apartment for approximately one month before February 25, 1979. Her son, Keith, and daughter, Holly, as well as defendant's daughter, Laura, were also living in the apartment. On the night of February 24, 1979, defendant and Quanstrom had an argument, which resulted in her asking defendant for a second time to move out of the apartment. She had previously told him to move out of the apartment one week before. At 7 p.m. on February 24,

1979, defendant walked out of the apartment. One hour later, Quanstrom left the apartment to go to work as a bartender at the tavern across the street. When she arrived at the tavern, defendant was already there. He was drinking shots of tequilla, and throughout the evening he made snide remarks to Quanstrom. At approximately 3:20 a.m. on February 25, 1979, Quanstrom closed the tavern. She crossed the street, entered her building and went to the door of her apartment. As she opened her apartment door, defendant, who did not have a key to the house or apartment, knocked down the front door of the building, ran up the stairs toward Quanstrom and began to hit her in the face. He punched her three or four times in the face, causing her to scream. As he was striking her, the phone began to ring, and defendant ripped it off the wall. He then pulled out a knife and held it to her face. At that moment, her son, Keith, came out of his bedroom, and defendant put down the knife. Within minutes the police arrived, and defendant was arrested.

Jane Quanstrom is a diabetic. At the time of this incident, she was giving herself hypodermic injections of insulin. Consequently, hypodermic syringes were present in the apartment.

In response to a radio call at approximately 3:30 a.m. on February 25, 1979, Officer Paul Greves of the Blue Island Police Department went to the apartment of Jane Quanstrom. When he received the call, he was one to two blocks from the apartment. He noticed that the front door of the building had been broken open, and there were wood splinters on the floor. Inside the Quanstrom apartment, he saw that Jane Quanstrom's face was discolored, her lower lip was swollen, and her hair and clothing were disheveled. Defendant was inside the apartment. Quanstrom told Officer Greves that defendant had beaten her and she wanted him arrested. Defendant was then placed under arrest.

As defendant was about to be handcuffed, he asked the police officers if he could wear his jacket to the police station. Officer Greves gave defendant the jacket. While at the apartment and the police station, Officer Greves had an opportunity to observe defendant answer questions and walk under his own power. In his opinion, defendant had been drinking, but was not intoxicated. Once handcuffed with his hands behind his back, defendant was transported to the police station. At the station, defendant's clothing was searched and his personal belongings were inventoried. Officer Greves discovered during this process a hypodermic syringe in defendant's jacket.

On cross-examination, Officer Greves admitted that his police report of this incident contained no reference to defendant holding a knife to Jane Quanstrom's face. Additionally, defense counsel brought the defendant's arrest card to the attention of Officer Greves, and Greves stated that

he had filled out this card and signed it. Defense counsel, however, did not impeach the testimony of Officer Greves with the arrest card. The prosecutor on redirect examination questioned Officer Greves with respect to the arrest card. He testified that the card contained a series of questions, one of which was whether defendant was sober. To answer that question, the arresting officer was to check one of two boxes entitled "Yes" or "No." On defendant's arrest card, Officer Greves checked the "No" box. The prosecutor then asked the trial court to admit the card into evidence. Objection was raised by defense counsel on the grounds of hearsay and relevance. Without a sidebar or argument, the trial court admitted the card into evidence. We would note here that another question on the arrest card was entitled "Narcotics" and Officer Greves had checked the "Yes" box.

According to defendant's eight-year-old daughter, Laura, she woke up during the early hours of February 25, 1979, when she heard her father and Jane Quanstrom arguing in the dining room. She did not see defendant hit Quanstrom.

Defendant testified in his own behalf. On the night of February 24, 1979, he consumed over 20 bottles of beer and eight shots of tequilla. At 3 a.m. he was at the tavern where Jane Quanstrom was working as a bartender. After the tavern closed, he headed back to the apartment. He forced open the front door of the building and went up to the apartment. She was on the phone when he entered, and he, out of anger, took the phone out of her hand and slammed it down. They then began to talk. Moments later, the police arrived. He does not remember striking Jane Quanstrom.

In closing arguments, the prosecutor in both his opening argument and his rebuttal drew the jury's attention to defendant's arrest card and the responses of Officer Greves recorded on that card. Following closing arguments, the trial court instructed the jury on the law. The defense of intoxication was included in those instructions. When the jury retired to the jury room, those items admitted into evidence, including defendant's arrest card, were given to them.

## Opinion

The first issue is whether the trial court erred in admitting defendant's arrest card into evidence. Defendant maintains that the arrest card, as a police report, is essentially hearsay and inadmissible. Police reports, defendant contends, are the officer's summation of the information and statements given by witnesses and victims at the scene. These out-of-court statements cannot be offered to prove the truth of the matter asserted therein. The State responds that the arrest card was not used to prove the truth of the matter asserted therein; rather, it was offered into evidence to show the limited choice of answers available to Officer Greves in

answering questions on the cards. Proof of this limited choice was necessitated, says the State, by the defense counsel's use of the arrest card to impeach Officer Greves.

■■ Generally, police reports are not admissible into evidence. (*People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056; *People v. Morris* (1978), 65 Ill. App. 3d 155, 382 N.E.2d 383.) After receiving information from the witnesses and victims of a crime, police officers record a summary of this information in various police reports. If offered to prove the truth of the matter asserted therein, these reports, consisting almost entirely of out-of-court statements of persons other than the police officer, would be hearsay. Those portions of a police report which are based solely on the officer's own knowledge are also hearsay because they are the officer's out-of-court written statements being offered to prove the truth of the matter asserted therein. (See generally McCormick on Evidence §246 (2d ed. 1972); Hunter, Trial Handbook for Illinois Lawyers §66.7 (4th ed. 1972).) Therefore, a police officer must testify to matters within his own knowledge, and the police report may not be used to divulge substantive information. (*People v. Walls*; *People v. Morris*.) If, however, a proper foundation is laid, police reports may be used to refresh the witness' recollection (*People v. Morris*), or admitted into evidence as past recollection recorded (*People v. Carter* (1979), 72 Ill. App. 3d 871, 391 N.E.2d 427), or used to impeach the witness. (*People v. Turner* (1963), 29 Ill. 2d 379, 194 N.E.2d 349.) In one Illinois case, the mere attempt to introduce a police report into evidence was found to be error resulting in a reversal of the defendant's conviction. *People v. Richardson* (1977), 48 Ill. App. 3d 307, 362 N.E.2d 1104.

In the present case, Officer Greves testified on direct examination that defendant was not intoxicated at the time of his arrest, but had been drinking. On cross-examination, defense counsel confronted Greves with defendant's arrest card which Greves had filled out and signed. Although Greves had marked on the arrest card that defendant was not sober, defense counsel did not use the arrest card to impeach Greves on this point. Contrary to the State's position in its brief and in argument before this court, no impeachment occurred on this point. On redirect examination, the prosecutor questioned Greves as to the format of the questions and answers on the arrest card. The question with regard to the sobriety of defendant had two possible answers: "Yes" or "No." Greves marked the negative answer. Greves stated that if he believed a suspect had consumed any alcohol, he would have answered the question in the negative. This line of questioning was developed by the prosecutor because he apparently believed that defense counsel had used the arrest card to impeach Greves on this point. The prosecutor then moved to have the arrest card admitted

into evidence. Over objections of hearsay and relevance raised by defense counsel, the trial court admitted the arrest card into evidence.

■■ Admission of the arrest card into evidence was error in this case. The information contained on the arrest card consisted of out-of-court statements. Since defense counsel did not use the arrest card to impeach Officer Greves, the prosecutor could not properly use the arrest card as evidence of the limited choices available to Greves. The only purpose the card served was to prove the truth of the matters asserted therein. Consequently, the arrest card was inadmissible hearsay evidence. We must now decide whether this error requires reversal of defendant's conviction.

On the arrest card, Officer Greves had marked that defendant was not sober. Because the defense in this case is intoxication, this information can only be helpful to the defendant. This is not, however, the only information on the card. Immediately adjacent to the sobriety question is the inquiry "Narcotics" with two available answers, "Yes" or "No," which may be checked. Greves marked the "Yes" answer. Consequently, when the jury viewed this arrest card during its deliberations, they saw that Greves believed defendant was under the influence of narcotics. This information conveys to the jury the message that defendant had engaged in other criminal conduct for which he was not presently standing trial. Moreover, the trial court did not instruct the jury, at any time throughout the trial, that this card was admitted for a limited purpose. And the prosecution during closing arguments twice drew the attention of the jury to the arrest card. Certainly, evidence of other criminal conduct by the defendant is highly prejudicial. (See *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) The magnitude of its effect on the jury can be neither ignored nor underestimated. We therefore cannot say the error was harmless beyond a reasonable doubt.

■■ The State maintains that defendant has waived any objection to the narcotics information on the arrest card because his objections at trial were not specifically aimed at this portion of the arrest card. For support, the State cites the proposition that an objection to evidence on a specific ground at trial waives any objection to that evidence on other grounds on appeal. (*People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601.) When the arrest card was offered into evidence by the prosecutor in this case, the following colloquy occurred:

"DEFENSE COUNSEL: Judge, could I approach the bench, please?

TRIAL COURT: You have an objection?

DEFENSE COUNSEL: Yes, Judge.

TRIAL COURT: State your reason for it.

DEFENSE COUNSEL: Could I approach the bench? Well,

fine. It is hearsay. It is an out-of-court statement made by the officer. He is here to testify. That piece of paper is hearsay.

TRIAL COURT: Any others?

DEFENSE COUNSEL: Yes. Besides that most of it is irrelevant.

TRIAL COURT: It may be—you have no other objections?

DEFENSE COUNSEL: Hearsay and relevance.

TRIAL COURT: It may be admitted into evidence * * *."

Defense counsel properly objected to the entire report as hearsay. In addition, defense counsel stated that most of the information was irrelevant. The proper objection to evidence of other criminal behavior is relevance. Consequently defense counsel by objecting on the ground of relevance adequately preserved the issue of the admissibility of information regarding narcotics. Having found that this objection was not waived and that the admission of this information was highly prejudicial, we concluded that reversible error was committed and that defendant's conviction must be reversed and the action remanded for a new trial.

■■ In light of our decision to reverse and remand for a new trial, we do not believe a detailed examination of each of the 35 allegedly improper questions asked by the State in *voir dire* is merited here. Suffice it to say that Supreme Court Rule 234 expressly prohibits counsel from questioning prospective jurors, directly or indirectly, concerning matters of law or instructions. (Ill. Rev. Stat. 1977, ch. 110A, par. 234.) The purpose of *voir dire* examination is to permit counsel to determine whether the prospective jurors are free from bias and prejudice. (*People v. Carpenter* (1958), 13 Ill. 2d 470, 150 N.E.2d 100, *cert. denied* (1958), 358 U.S. 887, 3 L. Ed. 2d 115, 79 S. Ct. 128.) Counsel, however, may not use *voir dire* to precondition prospective jurors to his theory of the law. Furthermore, counsel should be limited by the trial judge to those questions which will provide guidance in determining whether a prospective juror will perform his or her duty in accordance with the judge's instructions on the law.

Accordingly, the judgment of the circuit court is ·reversed and remanded for a new trial.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.