### PEOPLE v COLLIER

Docket No. 45794. Submitted December 17, 1980, at Detroit.—Decided
April 7, 1981. Leave to appeal applied for.

Anthony A. Collier was convicted of second-degree murder and
was sentenced to prison, Detroit Recorder's Court, Donald L.
Hobson, J. He appeals, alleging that admission of the prose-
cutor's comment in his opening statement regarding defen-
dant's refusal to sign a statement which defendant made to
police and subsequent testimony by a prosecution witness re-
garding the incident denied him his right to remain silent, that
he should be granted specific enforcement of a sentence agree-
ment made in connection with the previous tender of his guilty
plea, that the trial court improperly considered the crime with
which he was originally charged, but of which he was not
convicted, in imposing sentence, that the trial court erred in
admitting evidence of the results of blood-grouping tests, and
that he and his counsel were intimidated by certain comments
made by the prosecutor during trial. *Held:*

1. The prosecutor did not comment on defendant's silence,

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 356.

[2] 21 Am Jur 2d, Criminal Law §§ 503-506.

Right to withdrawn guilty plea in state criminal proceedings where
court refuses to grant concession contemplated by plea bargain.
66 ALR3d 902.

[3] 21 Am Jur 2d, Criminal Law § 527.

[4] 4 Am Jur 2d, Appeal and Error §§ 476-485.

20 Am Jur 2d, Courts §§ 56-59.

[5] 46 Am Jur 2d, Judgments §§ 3, 6.

[6] 29 Am Jur 2d, Evidence § 370.

30 Am Jur 2d, Evidence § 1104.

Blood grouping tests. 46 ALR2d 1000.

[7] 60 Am Jur 2d, Perjury §§ 1-3.

[8] 81 Am Jur 2d, Witnesses §§ 1-3.

[9] 7 Am Jur 2d, Attorneys At Law § 144.

60 Am Jur 2d, Perjury § 48.

Rights and duties of attorney in a criminal prosecution where client
informs him of intention to present perjured testimony. 64
ALR3d 385.

but on defendant's statement which the trial court found to be voluntarily made. The witness's testimony concerned defendant's refusal to sign the statement. Such comment and testimony were not improper.

2. Defendant was permitted to withdraw his guilty plea after the trial court decided not to impose sentence in accordance with the sentence agreement. Specific enforcement of the terms of the agreement is not necessary.

3. The trial court properly could have considered the original charge against defendant prior to imposing sentence as defendant was afforded an opportunity to refute the charge.

4. The evidence of the results of blood-grouping tests was not used to include defendant within a class of possible defendants but was properly admitted to include the victim within a class of possible victims, permitting the jury to draw the inference that the blood belonged to the victim, thus helping to connect defendant with the crime.

5. The prosecutor correctly stated that certain duties devolve upon defense counsel where his client seeks to offer perjured testimony and that where counsel has prior knowledge thereof he has a duty to prevent the presentation of such testimony. The record reveals that defendant did not suffer such prejudice from the prosecutor's comments as to require reversal.

Affirmed.

1. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO REMAIN SILENT — PROSECUTOR'S COMMENTS — PRIOR STATEMENTS.

The rule proscribing comment by a prosecutor regarding a defendant's assertion of his right to remain silent following arrest does not apply to a prosecutor's comment in his opening statement referring to the refusal by the defendant to sign his voluntary statement to police prior to consulting with an attorney.

2. CRIMINAL LAW — GUILTY PLEAS — SENTENCING AGREEMENTS — WITHDRAWAL OF PLEAS.

A defendant only need be allowed to withdraw his guilty plea tendered pursuant to a sentence agreement where a lower court withdraws from the agreement prior to imposing sentence; specific enforcement of the agreement is not required.

3. CRIMINAL LAW — SENTENCING — ALLEGED CRIMINAL CONDUCT — COURT RULES.

A trial court has wide discretion in imposing sentence and may consider evidence of a defendant's other alleged criminal conduct not resulting in conviction, provided that the defendant is

given an opportunity to refute such evidence (GCR 1963, 785.12).

4. CRIMINAL LAW — APPEAL — COURT RULES — SENTENCING.

The Court of Appeals may permit a transcript of record to be amended by correcting errors, including errors in the length of the sentence imposed (GCR 1963, 820.1[4]).

5. COURTS — JUDGMENTS — ORDERS — OPINIONS.

A court speaks through its orders and judgments and not through its opinions.

6. CRIMINAL LAW — EVIDENCE — BLOOD TESTS.

The admission of evidence of the results of blood-grouping tests is proper to include a victim in a particular class and permit a jury to draw an inference that certain blood samples belonged to the victim, thus helping to connect a defendant with a crime.

7. CRIMINAL LAW — CONSTITUTIONAL LAW — PERJURY — DUE PROCESS.

A criminal defendant has no constitutional right to commit perjury during trial without being cautioned by the trial court of the consequences of his actions, and such cautioning outside the presence of the jury does not violate a defendant's due process rights.

8. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO CALL WITNESSES.

A criminal defendant has a constitutional right to call witnesses in his behalf without having his witnesses intimidated.

9. CRIMINAL LAW — DEFENSE ATTORNEYS — PERJURY.

Defense counsel in a criminal case who has knowledge of a defendant's intention to offer perjured testimony has a duty to prevent the presentation of such testimony.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*Rolf E. Berg,* Assistant State Appellate Defender, for defendant on appeal.

Before: CYNAR, P.J., and BASHARA and BEASLEY, JJ.

CYNAR, P.J. Defendant was convicted by a jury of second-degree murder, MCL 750.317; MSA 28.549, and was sentenced to from 12-1/2 to 25 years imprisonment. Defendant now appeals of right.

The victim, Bernard Mangham, was a homosexual who frequently picked up men at bars. Charles Hubert, the manager of the victim's apartment building, had been concerned for Mangham's safety as there had been a great deal of "traffic" in the victim's apartment.

Hubert testified that on July 20, 1978, while checking door to door for the source of a very strong odor, he discovered Bernard Mangham's body inside Mangham's apartment. Hubert immediately called the police. Officer Gary Grange was dispatched to the apartment building. He testified that, upon entering the apartment, he observed the deceased's body, nude except for socks, in a kneeling position, head faced down on the sofa, with a pair of bloody black underpants in his left hand. There was no evidence of a forced entry into the apartment.

Dr. Sawait Kanluen, a medical examiner who performed an autopsy on the victim, testified that the cause of death was two stab wounds which had cut the main blood vessels of the neck.

On July 23, 1978, Officer Greg Joras observed the victim's car outside a restaurant and placed it under surveillance. Two men entered the car and drove away. Officer Joras stopped the car and arrested the driver, defendant, and the passenger, Michael Leaphart. Officer Joras confiscated from defendant various items belonging to the deceased, including an automobile registration, credit cards,

and a checkbook. A later search of the vehicle produced various items, including a suitcase which contained a bloodstained T-shirt with defendant's name on it, a knife which had been wrapped in the T-shirt, and a wallet containing the victim's identification.

Ronald Badaczewski, an expert serologist, testified that the knife and T-shirt revealed type-O blood, the blood type of defendant and the victim. He further testified that this blood type is found in 45 percent of the population.

Sergeant Loy testified that, after defendant read aloud his *Miranda*[1] rights and signed a form indicating that he understood his rights, defendant made a statement. In the statement he said that he had often been paid by Bernard Mangham to have sex with him, that on the day in question he slept with Mangham, then left early in the morning with deceased's car, that he went back in the afternoon to Mangham's apartment and found the body, that he found his knife and T-shirt full of blood, that he took his things because he did not want them to be found with the deceased and, that he subsequently used Mangham's car and credit cards because he needed a car and money. After Officer Loy wrote the statement down, he had defendant read it and asked defendant to sign it. Officer Loy testified that defendant read it and acknowledged that it was a true statement but refused to sign it without consulting an attorney.

Prior to trial, defendant's motion to suppress his statement was denied by the trial court. Defendant did not testify at trial.

Defendant first contends that the prosecutor's comment in his opening statement, to the effect

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

that a witness would testify that defendant said he would not sign a statement he made to police unless he first consulted an attorney and the witness's subsequent testimony consonant with the prosecutor's remark, were impermissible comment on defendant's right to counsel and his exercise of his right to remain silent.

The latter contention is without merit, as defendant's reliance on *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), is misplaced. *Bobo* is not applicable where a defendant has made a statement because silence is not involved. *People v Richendollar,* 85 Mich App 74, 82; 270 NW2d 530 (1978), *lv den* 405 Mich 820 (1979).

The argument relative to defendant's asking to consult with counsel relates more to whether defendant's statement was, in fact, voluntary. The trial court found that it was voluntarily made at a *Walker*[2] hearing, and the issue is not directly raised on appeal. Moreover, we are unable to see how this testimony was damaging to defendant. If anything, it was somewhat favorable to defendant, as it would tend to undercut the evidentiary weight of the statement in the eyes of the jury because they were told that the statement was unsigned, albeit with the addendum that defendant told the interrogating officer that the statement was true. Therefore, we find no reason to reverse on this predication of error.

In his next argument, defendant claims that he must be granted specific enforcement of a sentence agreement made in connection with a guilty plea tendered by defendant in this case, even though he was allowed to withdraw his plea after the lower court withdrew from the sentencing agreement.

---

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

This argument is without merit. *People v Nickerson,* 96 Mich App 604; 293 NW2d 644 (1980). Allowing defendant the opportunity to withdraw his plea was all that was required here.

Defendant's argument that the trial judge improperly considered the crime with which defendant was initially charged (first-degree murder) in passing sentence is lacking in substance. A trial judge has wide discretion in imposing sentence. *People v Watroba,* 89 Mich App 718, 724; 282 NW2d 196 (1979). Moreover, the court may consider other criminal activity for which no conviction resulted, provided that defendant is given an *opportunity* for refutation, as found in GCR 1963, 785.12. *People v Moore,* 70 Mich App 210, 213; 245 NW2d 569 (1976). In this case, the prosecutor, prior to sentencing, recommended a sentence of 24 years, bringing to the court's attention the fact that defendant had been charged with first-degree murder. Assuming, *arguendo,* that the court considered this in sentencing defendant, no error will lie, on the facts of this case, as defendant was afforded the opportunity for refutation.

Defendant's request for a remand for clarification of sentencing is unnecessary. Any transcription error in the length of sentence meted out is susceptible to correction by this Court under GCR 1963, 820.1(4). *People v Taylor,* 73 Mich App 139, 143; 250 NW2d 570 (1977), *lv den* 400 Mich 813 (1977). Moreover, the order of conviction and sentence properly indicates a sentence of from 12-1/2 to 25 years imprisonment, and it is beyond question that a court speaks only through its orders and judgments. *Nemes v Smith,* 37 Mich App 124, 126; 194 NW2d 440 (1971), and the cases cited therein.

Next, defendant claims that the trial court com-

mitted error requiring reversal in admitting blood-type evidence at trial as it was used solely for purposes of including defendant within a class of possible defendants. We disagree, for we do not find that the evidence was admitted for this purpose.

The serologist's testimony indicated that the bloodstains found on a T-shirt which defendant admitted was his and on a knife found in defendant's possession when arrested were of a blood type matching that of the victim, of defendant, and of 45 percent of the population. As we see it, the evidence was admitted primarily to include the victim in a class of possible victims, which is proper, *People v Spencer,* 93 Mich App 605, 608; 286 NW2d 879 (1979), and would permit the jury's drawing an inference that the blood belonged to the victim, thus helping to connect defendant with the crime.

With respect to the testimony that the bloodstains were of a type matching defendant's blood type, this evidence could only prove to be exculpatory, for if the blood was defendant's it could not have been the victim's. Therefore, in no way was the evidence used to include defendant in a class of possible defendants, even assuming, *arguendo,* that such use of blood-type evidence is impermissible. There are no grounds for reversal here.

As a final argument for reversal of his conviction, defendant contends that he was intimidated by the prosecutor when the prosecutor remonstrated defense counsel relative to limitations and duties imposed upon defense counsel by the Code of Professional Responsibility[3] and the possibility of sanctions resulting from a breach of those

[3] See the Code of Professional Responsibility and Canons, DR 7-102(A)(4), and Ethical Consideration 7-26, *inter alia.*

duties in a situation where a defendant seeks to give perjured testimony with counsel's knowledge thereof.[4] This, defendant argues, impermissibly chilled his right to testify because of his fear of sanctions being imposed against defense counsel should he testify. Moreover, defendant claims that counsel's ability to represent defendant with the utmost zeal was compromised because counsel's judgment was clouded by the specter of disciplinary action being taken against counsel should defendant testify. The net effect of this was to deny defendant a fair trial, according to defendant, and, therefore, the trial court reversibly erred in refusing to grant defendant's motion for a declaration of a mistrial.

---

[4] The prosecutor's remarks, made outside the presence of the jury, came after jury voir dire but before the people began to present their case in chief. At that time, the prosecutor stated:

"Now, I am fully aware of the case law which indicates that it would be improper for the People either through their case in chief or through the impeachment process to bring up anything that the defendant may have said during the course of [his guilty] plea. However, I think there are some problems that have arisen in regards to if the situation arises, whether the defendant is going to take the stand. And the problems in that regard are that there are certain standards—one as announced by the A.B.A. on the prosecution and defense function and also in the State Bar of Michigan Code of Ethics. And those involve the presentation before a court or a jury of testimony which is perjured testimony.

"Now, I do not know whether the defendant is going to take the stand or not. However, if he does and if he is going to make a statement or answer questions which are contrary to the way he testified at the time of the plea, then I think that problem arises. And the A.B.A. standards enumerate certain limitations or qualifications on, one, what a defense counsel may or may not do if, in fact, his client is adamant in taking the stand, in fact, perjuring himself through his testimony.

"And I am making the court aware of that situation, making the court aware that there are certain limitations which the A.B.A. indicates should be placed on the defense counsel if that is going to be the situation.

"And I believe the State Bar of Michigan is in conformance with the A.B.A. standards and has had decisions involving the presentation of perjured testimony. So I just want to make the court aware of that as I made [defense counsel] aware of it this morning. And that is basically the complete statement I have to make."

The people argue that what occurred was not an attempt to intimidate either defense counsel or defendant, but an attempt by the prosecutor to prevent the perpetration of a fraud on the court and the thwarting of justice, consonant with the prosecutor's duty to attempt to insure a fair ascertainment of the truth.

In analyzing this issue, two cases from our Supreme Court immediately come to mind. In the first case, the Court held that a defendant has no constitutional right to take the stand and commit perjury without being cautioned by the court of the consequences therefor. *People v Wein,* 382 Mich 588, 591; 171 NW2d 439 (1969). In the second case, it was held that a defendant has a constitutional right to call witnesses in his behalf without their being intimidated, *People v Pena,* 383 Mich 402, 406; 175 NW2d 767 (1970). Neither of the above cases presents the identical fact situation as is present here, but they are helpful in framing the legal issue with which we are dealing. In *Pena,* the witnesses who may have been intimidated did not include the defendant, himself, but were defense witnesses sent a letter by the prosecutor cautioning them about the crime of and penalty for perjury. In lieu of outright reversal, the Court remanded the case to the trial court for a hearing on the question of whether the letter sent by the prosecutor intimidated the witnesses.

In *Wein,* the defendant was informed by the trial court that he could be held in contempt for committing perjury, which perjury was apparent on the face of defendant's testimony. The Supreme Court found no due process violation, cautioning all defendants and counsel that: "[m]inds should be disabused of the idea that the trial of a criminal case is a game or sport in which defendant

* * * is to be assisted by the law in concealing the truth from the trial court and jury". *Id.,* 591-592.

The situation here is one in which defendant was not advised of the consequences which could befall him if he committed perjury but instead was present when defense counsel was apprised of the ethical considerations present should defendant seek to give perjured testimony and of the consequences to counsel should he *knowingly* present perjured testimony.

The prosecutor was correct in stating that certain duties devolve upon defense counsel where his client seeks to present perjured testimony. Where counsel has prior knowledge thereof, at a minimum his or her duty is to prevent the presentation of such testimony. In addition, some cases indicate that counsel must withdraw from representation of the defendant. Other cases advise that counsel, consistent with the ethical obligations owed to a client, may, not must, inform the trial court of his or her client's intent. See generally Anno: *Rights and duties of attorney in a criminal prosecution where client informs him of intention to present perjured testimony,* 64 ALR3d 385.

The common thread in these cases is that counsel has prior knowledge of the client's intent to commit perjury and that the testimony in fact will be perjured. In the case at bar, the prosecutor, in making his statement to the court in the presence of defendant, did not circumscribe the scope of defense counsel's duty solely to such situations. Instead, the prosecutor merely assumed that, if defendant took the stand at trial and testified contrary to admissions he made at the prior guilty-plea proceeding, defendant would be committing perjury, and defense counsel knowingly would be assisting in the presentation of perjured testimony.

There may be a question of whether the prosecutor should have raised this issue in open court in the presence of defendant or if the issue should have been raised at all. Perhaps the prosecutor should have requested to meet with the judge and defense counsel in chambers to discuss the question. Or it might be argued that it was defense counsel's duty in the first instance to address his client regarding counsel's ethical obligations under the Code of Professional Responsibility, with or without apprising defendant of the resultant consequences to counsel in this situation for failure to abide by that duty as well as to inform defendant of the consequences to defendant for committing perjury. It is difficult to set out a hard and fast rule in this sensitive area which will cover all situations.

Upon balancing all the competing considerations, we conclude that defendant did not suffer any prejudice for which reversal is required.

Affirmed.