THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANNIE BARNES, Defendant-Appellant.

First District (4th Division)    No. 80-1749

Opinion filed June 17, 1982.

LINN, J., dissenting.

Robert E. Senechalle, Jr., and Stephen R. Murray, both of Senechalle & Murray, P.C., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean C. Morask and Sheila M. King, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ROMITI delivered the opinion of the court:

Defendant Dannie Barnes was convicted of murder and concealment of a homicidal death following a jury trial and was sentenced to concurrent terms of 30 and 5 years for those crimes. On appeal defendant contends: (1) the trial court erred in failing to utilize any of defendant's suggested questions during *voir dire*; (2) the State improperly adduced testimony concerning defendant's exercise of his fifth amendment right to silence; (3) the trial court erred in barring the testimony of a defense witness concerning a statement made to him by the defendant; (4) the trial court should have granted defendant's request that it instruct the jury on voluntary manslaughter; (5) the State's final argument to the jury was inflammatory and prejudicial; (6) the trial court erred in denying defendant's pretrial motion for a continuance.

We reverse and remand for a new trial.

At trial the State established that on September 15, 1979, the partially nude body of a woman was found in a field in Gary, Indiana. Utilizing the woman's high school ring the police determined her identity to be Betty Riley, a resident of Chicago. Subsequent police attempts to locate defendant, Riley's boyfriend, were unsuccessful although the police spoke to defendant's mother and were accompanied to his Chicago home by his brother.

On November 23, 1979, Gregory O'Brien, a police officer with the Naval Training Center in San Diego, met with the defendant and a Navy chaplain, Lieutenant Blackburn, in the chaplain's office. There defendant told O'Brien that he had killed a woman in Chicago. O'Brien then placed the defendant under arrest.

On December 28, 1979, Terrence Gainer, a homicide investigator with the Chicago Police Department, questioned defendant, asking if he wanted to tell what he knew of the death of Betty Riley. Defendant related that he was in the front bedroom of his Chicago apartment with Riley on September 14, 1979, when she began talking about defendant being "worth more dead than he was alive." At this time Riley was standing near a dresser and defendant was sitting on the bed. Defendant told Gainer he thought Riley was reaching for a knife on the dresser. He jumped from the bed, pushed her arm up, and as he did this he picked up an iron from the dresser and threw it at her. The electrical cord wrapped around her neck. Defendant denied having strangled Riley. Subsequently he "dumped" the body in Indiana with his brother's aid. Over defense objections Gainer testified that after relating this statement defendant refused to give a recorded statement of what he had just told Gainer.

Dr. Wei Ping Loh, the pathologist who examined Betty Riley, testified that he observed a transverse mark on her neck 8.2 centimeters in length and 6 centimeters wide. Her larynx appeared to be fractured. He also observed four hemorrhagic areas inside her scalp. It was his opinion to a reasonable degree of medical certainty that the cause of death was a head injury and strangulation. He also testified that the mark on the neck was "most likely made by hand as opposed to a string or a cord."

(1)

At the commencement of *voir dire* defendant submitted 13 supplementary questions which he wished the court to ask the prospective jurors. Defendant contends that the trial court erred in failing to utilize any of these questions. Defendant also contends that the court was required to either permit direct questioning by defense counsel or to pose defendant's questions itself. We find no merit to either of these contentions.

Illinois Supreme Court Rule 234 (Ill. Rev. Stat. 1979, ch. 110A, par. 234) provides:

> "The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct inquiry as the

court deems proper. Questions shall not directly or indirectly concern matters of law or instructions."

As is stated in the Supplement to Historical and Practice Notes (Ill. Ann. Stat., ch. 110A, par. 234, Supplement to Historical and Practice Notes, at 178-79 (Smith-Hurd Supp. 1981)):

"This rule was amended effective July 1, 1975 to put the trial judge exclusively in charge of the voir dire examination unless he chooses to permit the parties or their attorneys to participate. Under the old rule the trial judge was required to initiate the voir dire but the parties or their attorneys had a right to supplement the judge's examination.

\* \* \*

The new rule, while it allows the trial judge to permit the parties or their attorneys to make direct inquiry, also introduces the alternative, embodied in the comparable federal rule, of requiring the parties to furnish their questions to the trial judge. The amended rule also makes it clear that the determination of which alternative to use, and whether to permit any supplement to its own examination, lies entirely with the court. In this rule 234 departs from the federal rule, which makes supplementary participation by the parties, either directly or through submission of questions to the judge, mandatory. \* \* \*"

■■ Clearly under this rule the decision whether to permit supplementary questions by counsel, directly or indirectly, is left to the discretion of the trial judge. (See *People v. Weinger* (1981), 101 Ill. App. 3d 857, 428 N.E.2d 924.) Thus contrary to defendant's contention the refusal of the court to permit any such supplementary questions does not constitute error *per se*. In ruling on defendant's request the trial court stated:

"Counsel, as far as your proposed jurors' questions are concerned some of them of the latter half are included in the Court's usual format of the advice to the jurors and some of those things in the first part the first several questions we do not address to the prospective jurors but at any respect some of your matters are included in the Court's usual advice to the jury. None of these questions will be asked that are outlined here the way they are stated here."

We have examined all of defendant's proposed questions although defendant has failed to specify which questions in particular were omitted to his prejudice. Some of those questions were clearly improper as constituting questions on the law or instructions (*People v. Banasik* (1981), 93 Ill. App. 3d 612, 417 N.E.2d 790), or as tending to precondition prospective jurors on defendant's theory of the law (*People v. Phillips* (1981), 99 Ill. App. 3d 362, 425 N.E.2d 1040; *People v. Banasik* (1981), 93

Ill. App. 3d 612, 417 N.E.2d 790.) Other questions were in substance included in the judge's statements, as he indicated they would be to counsel. Accordingly we find no abuse of discretion in the court's actions in this regard.

(2)

Defendant contends that when the State elicited from Officer Gainer the information that after giving a written statement defendant refused to give a recorded statement of what he had just told the officer this constituted prejudicial evidence of defendant's exercise of his fifth amendment right to silence.

■■ It is improper for the State to comment on or adduce evidence concerning a defendant's post-arrest exercise of this right. (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272; see *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133.) As defendant notes this proscription has been applied to testimony that a defendant answered some questions and then refused to answer additional questions. (*Booton v. Hanauer* (1st Cir. 1976), 541 F.2d 296; *People v. Ortega* (1979), 198 Colo. 179, 597 P.2d 1034.) But here defendant had given a complete statement to the police. The officer's testimony cannot reasonably be said to have been intended to discredit the exculpatory element of that statement, as defendant suggests. Rather this was an attempt to fully set out the circumstances of the oral statement and to explain the absence of any written evidence of it. Similar circumstances were presented to the Michigan appellate court in *People v. Collier* (1981), 105 Mich. App. 46, 306 N.W.2d 387. There the court found that State-adduced evidence that defendant made a statement and then refused to sign it without consulting a lawyer did not constitute comment on his exercise of the right to remain silent. Accordingly, we find no prejudice arising from the State's use of this testimony.

(3)

At trial the State successfully moved to preclude defendant from adducing the testimony of Chaplain Blackburn concerning a statement made by defendant just prior to his admission to Officer O'Brien concerning the killing. Defendant contends that this was error.

In an offer of proof it was established that Blackburn would testify that on November 23, 1979, he received a phone call from defendant, who wanted to talk to him. They met in the chaplain's office that evening. Defendant then told Blackburn a version of the incident in which Betty Riley reached for an upholstery knife on the dresser, defendant thought she was going to harm him, and in the ensuing struggle he choked her.

■■ Contrary to defendant's contention, *People v. Newbury* (1972), 53 Ill. 2d 228, 290 N.E.2d 592, is not in point. There defense counsel, in an effort to establish the defendant's insanity, elicited the testimony of a defense-hired psychiatrist concerning defendant's account of a killing. Counsel then unsuccessfully sought to preclude use of this testimony by the State as substantive evidence of guilt. The court ruled that this testimony was properly utilized by the State as an admission. Here it is defendant who seeks to use his own statement as substantive evidence. That he cannot do, for the statement is hearsay. (*People v. McLaughlin* (1929), 337 Ill. 259, 169 N.E. 206; *People v. Garth* (1975), 31 Ill. App. 3d 716, 344 N.E.2d 359; *People v. Colletti* (1968), 101 Ill. App. 2d 51, 242 N.E.2d 63.) Thus the trial judge did not err in granting the State's motion *in limine*.

(4)

■■ At the instructions conference defendant sought to have the jury instructed on voluntary manslaughter, contending that there was evidence defendant had acted in the mistaken belief he had a right to act in self-defense (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b)), and also contending that defendant was acting under a sudden and intense passion resulting from serious provocation by Betty Riley. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(a).) The trial court refused these instructions, stating:

> "There really isn't any evidence of [self-defense] except a self-serving allegation that has been referred to by a witness. That is what the defendant told him in the statement, partially. And it wouldn't be sufficient."

We find that this was error requiring reversal of defendant's convictions. As was stated in *People v. Lockett* (1980), 82 Ill. 2d 546, 550, 413 N.E.2d 378, 381:

> "It is the settled rule in murder cases that if there is evidence in the record which, if believed by a jury, would reduce the crime to manslaughter, an instruction defining manslaughter should be given. [Citations.]"

Here the sole basis for defendant's conviction for murder was his own statement to the police. Yet in that same statement defendant indicated that, believing the victim was reaching for a knife, he pushed her away and threw an iron at her. Defendant's contention was that the cord then wrapped around the victim's neck, strangling her. The State contends that this assertion was incredible and was rebutted by the testimony of the pathologist. In fact that witness testified only that it was most likely that the strangulation was manual rather than by a string or cord. Furthermore the believability of defendant's version of the killing was for the jury to decide. The trial court's action precluded defendant from obtaining their consideration of this theory despite the evidentiary basis for it. This error

requires reversal of defendant's convictions and remandment of the cause for a new trial. *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378; *People v. Rodriguez* (1981), 96 Ill. App. 3d 431, 421 N.E.2d 323.

■■ Defendant also contends that an instruction on voluntary manslaughter based on defendant having acted in the heat of passion should have been given. But we find no evidence to support such an instruction. Nothing in defendant's statement to the police suggested that he was acting in the heat of passion when he threw the iron at the victim. Certainly the victim's words alone were insufficient to justify the instruction. (*People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451; *People v. Pequino* (1978), 62 Ill. App. 3d 75, 379 N.E.2d 30.) Thus we find no error in the failure of the trial court to give an instruction on this form of voluntary manslaughter.

### (5)

■■ We also find that defendant's right to a fair trial was prejudiced by improper comments made by the State in final argument to the jury. At trial defendant had successfully moved to preclude the State from eliciting from Officer Gainer the information that human blood (of indeterminate type) was found on the bedroom floor of defendant's home 13 days after Betty Riley's death. No other evidence from that apartment was introduced by the State. In final argument defense counsel commented to the jury on the lack of any evidence from the apartment. In his argument the prosecutor then stated:

> "Ladies and gentlemen, Counsel told you that we didn't tell you what happened in the apartment. Counsel knows all the evidence in the apartment. He knows what we had. We would wish we could show it to you."

Defendant's objection to this was sustained but his request for a mistrial was denied. These comments were highly improper and we find that the prejudice arising from them was not eliminated by the mere sustaining of defendant's objection. In a case where no direct physical evidence linked defendant to the crime the suggestion by the State that such evidence existed but was being withheld from the jury could only have been calculated to prejudice his case in the eyes of the jury. See *People v. Dyer* (1977), 47 Ill. App. 3d 63, 361 N.E.2d 770.

The prosecutor also stated, in reference to a character witness produced by the defendant, that:

> "* * * every murderer has somebody who likes him, thinks he is a good boy. John Gacy's mother would have come in and said her son was a good boy."

Again defendant's objection was sustained but his motion for a mistrial was denied. This effort by the State to inject into this case the image of a mass murderer whose case was fresh in the public mind was clearly

improper. Similar comments have been criticized by Illinois courts but then held to be harmless error. (*People v. Szerletich* (1980), 86 Ill. App. 3d 1121, 408 N.E.2d 1098; *People v. Lion* (1957), 10 Ill. 2d 208, 139 N.E.2d 757.) However we need not decide the prejudicial effect of this comment alone, for taken in combination with the State's improper suggestion of evidence withheld from the jury, and the failure of the trial court to instruct the jury on a lesser offense for which there was evidence in the record, we find that defendant was denied a fair trial and his convictions must be reversed and the cause remanded for a new trial.

### (6)

Because of our determination of these issues we need not reach defendant's contention concerning the failure of the trial court to grant a pretrial continuance.

For the reasons set forth defendant's convictions are reversed and the cause remanded for a new trial.

Reversed and remanded.

JOHNSON, P. J., concurs.


JUSTICE LINN, dissenting:

I respectfully dissent from the decision reached by my colleagues. It appears to me that the reversal is based upon the most tenuous of grounds. In my judgment, the reversal comes perilously close to abrogating the fundamental role of the judiciary to mete out justice supportive of our societal values as expressed in established law. This is not to say, however, that a defendant's right to a fair trial should be disregarded.

The majority correctly states the rule that a manslaughter instruction must be given if any evidence in the record, if believed, would reduce a charge of murder to the crime of manslaughter. (*People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373.) It also correctly states that "very slight evidence upon a given theory of a case will justify the giving of an instruction." *People v. Khamis* (1951), 411 Ill. 46, 53, 103 N.E.2d 133, 136.

However, as I see it, the foregoing authority does not establish a rule of law to the effect that an instruction must always be given no matter how fragile the connection betweem claimed activity and reality. Thus, as asserted by our court in *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 892, 420 N.E.2d 461, 466, quoting *People v. Bratcher* (1976), 63 Ill. 2d 534, 540-541, 349 N.E.2d 31, 34:

> "Nevertheless, the 'very slight evidence' test does establish a minimal level beneath which instructions need not be given. 'To

hold otherwise would permit a defendant to demand unlimited instructions * * * based on the merest factual reference or witness' comment.' "

I submit that the evidence presented by Dannie Barnes is just that—"the merest factual reference" based on a "witness' comment." As such, it does not approach the minimal level of evidence required, and thus a voluntary manslaughter instruction need not have been given.

The sole evidence offered as justification for a voluntary manslaughter instruction was in Barnes' statement to the arresting police officer. In that statement Barnes said that he threw an iron at the victim, Betty Riley, because she said Barnes was "worth more dead than alive" and appeared to be reaching for a knife. Allegedly, the electrical cord of the iron wrapped around Riley's neck and strangled her. However, it is clear that "[a defendant's statement must] tell a reasonable story or be judged by its improbabilities." (*People v. Morehead* (1970), 45 Ill. 2d 326, 330, 259 N.E.2d 8, 10.) I believe that in this case the defendant's story is so inherently improbable that it borders on the impossible. I necessarily must conclude that the able and experienced trial judge did not err in refusing to give a voluntary manslaughter instruction.

In addition to the insufficiency of the evidence itself to warrant giving a manslaughter instruction, defense counsel (who had represented Barnes at trial) acknowledged in oral argument that he had not requested that a self-defense instruction be given. Barnes' attorney admitted that his client's claim of a mistaken belief that self defense was reasonable was so unbelievable that he dared not even request an instruction on that theory. Further, when defense counsel was confronted with the fact that at trial he had structured his case on the theory of accident, not self defense, he replied, "Judge, I did. * * * The reason that I did was that I had nothing else."

"By its very nature self-defense, whether reasonable or not, relates to the intentional or knowing use of force and not to an accidental * * * [killing]." (*People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 893, 420 N.E.2d 461, 467.) Thus, it seems to me that, faced with a case argued on the basis of accident, the trial judge did not err in refusing a voluntary manslaughter instruction bottomed on a mistaken belief that self defense was necessary.

Considering the total record and the law as I understand it, I conclude that the grounds for affirming Barnes' conviction are by far much stronger and compelling than the grounds on which the reversal is based. I would affirm the trial court.